Opinion for the Court filed by Senior Circuit Judge EDWARDS.
Dissenting opinion filed by Circuit Judge KAVANAUGH.
EDWARDS, Senior Circuit Judge:
This appeal requires the court to consider whether the Speech or Debate Clause of the Constitution, U.S. CONST, art. I, § 6, cl. 1, bars this lawsuit by LaTaunya Howard against her former employer, the Office of the Chief Administrative Officer (“OCAO”) of the United States House of Representatives, for alleged racial discrimination and retaliation in violation of the Congressional Accountability Act (“CAA”), 2 U.S.C. §§ 1301-1438. Section 404(2) of the CAA creates a cause of action for covered employees in the legislative branch to sue in federal court for violations of the statute. Article I, section 6, in turn, provides that “for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place.” And “[t]he Speech or Debate Clause operates as a jurisdictional bar when the actions upon which a plaintiff [seeks] to predicate liability [are] legislative acts.” Fields v. Office of Eddie Bernice Johnson, 459 F.3d 1, 13 (D.C.Cir.2006) (en banc) (quotations, citations, and alterations omitted) appeal dismissed and cert. denied sub nom., Office of Senator Mark Dayton v. Hanson, 550 U.S. 511, 127 S.Ct. 2018, 167 L.Ed.2d 898 (2007).
The CAA “does nothing to a Member’s Speech or Debate Clause immunity.” Id. at 8. However, “a Member’s personal office may be liable under the [CAA] for misconduct provided that the plaintiff can prove his case without inquiring into legislative acts or the motivation for legislative acts.” Id. at 17 (quotations and citation omitted). This' is so because “[t]he Speech or Debate Clause ... does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions, or because it is merely related to, as opposed to part of, the due functioning of the legislative process.” Id. at 10 (quotations and citations omitted).
In this case, we must determine whether the Speech or Debate Clause requires dismissal of Ms. Howard’s suit under the CAA. Ms. Howard, who is African American, was hired by the OCAO as Deputy Budget Director on April 15, 2003; she was promoted to Budget Director in 2006. In January 2009, the position of Budget Director was abolished and Ms. Howard was involuntarily transferred to the position of Senior Advisor. On April 14, 2009, Ms. Howard was terminated by the OCAO for alleged insubordination. She commenced this action in District Court on September 15, 2009. Her complaint alleged “that: (1) her termination was based on her race; (2) her transfer from Budget Director to Senior Advisor constituted a demotion, which was based on her race; (3) she received less pay, by approximately $22,000 per year, than the Caucasian Senior Advisors; and (4) her termination was motivated in part by retaliatory animus stemming from her prior complaints to human resources regarding pay disparities and other issues.” Howard v. Office of Chief Admin. Officer of U.S. House of Representatives, 793 F.Supp.2d 294, 297 (D.D.C.2011). The first, second, and fourth of these claims are before us on appeal.
The OCAO moved to dismiss the action in the District Court on the ground that Ms. Howard could not prove her claims *942 without inquiring into matters protected by the Speech or Debate Clause. Id. at 295. The District Court denied the OCAO’s motion as to Ms. Howard’s claim that her transfer was an unlawful demotion based on her race. Id. at 308. However, the District Court held that Ms. Howard’s claims that her termination from the OCAO was motivated by her race and by retaliatory animus must be dismissed “because they cannot proceed without inquiry into actions — specifically, communications — that are shielded by the Speech or Debate Clause.” Id. On January 4, 2012, the District Court granted Ms. Howard’s Motion to Certify for Interlocutory Appeal, Howard v. Office of Chief Admin. Officer of U.S. House of Representatives, 840 F.Supp.2d 52 (D.D.C.2012); and on April 13, 2012, this court granted Ms. Howard’s Petition for Permission to Appeal, In re Howard, 2012 U.S.App. LEXIS 7593 (D.C.Cir. Apr. 13, 2012). We have jurisdiction over Ms. Howard’s appeal and the OCAO’s cross-appeal pursuant to 28 U.S.C. § 1292(b).
Both sides agree that the disputed adverse actions — Ms. Howard’s alleged demotion and termination — are not legislative acts. Hence, there is no jurisdictional bar to this action. The question in this case is whether Ms. Howard’s claims are precluded or limited by the evidentiary, testimonial, or non-disclosure privileges that emanate from the Speech or Debate Clause. See Fields, 459 F.3d at 14 (explaining that even “[w]hen the Clause does not preclude suit altogether, it still protects] Members from inquiry into legislative acts or the motivation for actual performance of legislative acts” (quotations and citation omitted)).
It is clear that, based on the parties’ submissions to the District Court, Ms. Howard’s demotion claim is not precluded. Daniel Beard, who was the Chief Administrative Officer (“CAO”), submitted an affidavit (“Beard Affidavit”) to the District Court stating three reasons to support Ms. Howard’s demotion. As we explain below, it is undisputed that the first two reasons and part of the third reason do not implicate the Speech or Debate Clause. The remaining reason is that Ms. Howard communicated to the Committee on Appropriations information that reflected her own preferences regarding the House budget rather than the views of the CAO. An attempt to quarrel with this allegation might well create a Speech or Debate Clause problem, but Ms. Howard stipulates that she communicated her personal views. Her only claim is that this is not what motivated her alleged demotion. In other words, Ms. Howard contends that she must “be afforded a fair opportunity to show that [the OCAO’s] stated reason [for her involuntary transfer] was in fact pretext.” McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The District Court correctly held that “[i]f, under Fields, Howard’s transfer was not a legislative act, and if Howard can prove that the [0]CAO’s justification for her transfer was not the real reason behind it — without probing whether, how, or why she actually communicated with committee staff regarding the budget and the appropriations bill — then the Speech or Debate Clause should present no bar to her claim.” Howard, 793 F.Supp.2d at 307.
Likewise, Ms. Howard’s termination claim is not precluded. The Beard Affidavit asserts that Ms. Howard was terminated because she refused to complete a task she was assigned. Ms. Howard concedes that she did not complete the task, but says that the reason was that she did not have the necessary computer, data access, or staff support. There is an obvious credibility dispute between the parties. However, whether Ms. Howard had the resources and support needed to complete *943 the task to which she was assigned concerns %o%-legislative matters and, thus, does not implicate the Speech or Debate Clause.
In sum, based on the record before us, we hold that the Speech or Debate Clause does not require the dismissal of this action. Ms. Howard may proceed with her all of her claims under the CAA, subject to the applicable strictures of the Speech or Debate Clause. Accordingly, we affirm in part and reverse in part the judgment of District Court and remand the case for further proceedings consistent with this opinion.
I. BACKGROUND
A. Facts
Pursuant to House Rule II(4)(a), the CAO “shall have operational and financial responsibility for functions as assigned by the Committee on House Administration.” In addition, pursuant to House Rule II(4)(b), the CAO is, inter alia, responsible for providing semiannual financial and operational reports to the Committee on House Administration. The OCAO avers that the CAO supports the House Committees on Appropriations and House Administration by providing budget figures, financial analyses, and financial projections. See Beard Aff. ¶ 6, reprinted in Joint Appendix (“J.A.”) 93. Of particular relevance to this case, the CAO is responsible for the Government Contributions Account (the “Account”), “which encompasses the employer-paid portion of [various employment taxes and benefits for all House employees, and] is one of the largest line items in the annual legislative branch appropriations bill.” Id. ¶ 9, reprinted in J.A. 95. The parties agree that the OCAO engages in legislative activities, including many concerning the Account, but that not all of its activities are legislative. The parties also agree that Daniel Beard was the CAO at all times relevant in this case.
LaTaunya Howard avers that she received the highest or second-highest overall rating in her performance evaluations when she served as Deputy Budget Director and Acting Budget Director. In 2006, she was promoted to the position of “Budget Director” — also known as “Director of the Budget Management Directorate” — after a Caucasian male was offered and declined the position. Ms. Howard alleges that she continued to receive high performance ratings throughout her tenure at the OCAO, although she disputed an “unjustifiably lower” evaluation on her last pre-termination evaluation. PL’s First Am. Compl. ¶ 29, reprinted in J.A. 14.
The OCAO asserts that, as Budget Director, Ms. Howard had major legislative responsibilities, including: preparing a budget for the House of Representatives for upcoming fiscal years; working cooperatively with other non-OCAO offices in the House, including the Committees on Appropriations and House Administration, leadership offices, and others; and communicating budget information to the CAO, the Committees on Appropriations and House Administration, and other employees of the OCAO. Beard Aff. ¶ 8, reprinted in J.A. 94.
The parties differ in their explanations as to the reasons for Ms. Howard’s involuntary transfer. Ms. Howard alleges that, in January 2009, she was informed that the CAO was reorganizing the OCAO. Most relevantly, the CAO abolished the Budget Management Directorate (and the position of “Budget Director”) and gave Ms. Howard the new title of Senior Advisor, reporting to Deputy CAO Ali Qureshi. She further alleges that she was told the position of Budget Director was being eliminated and that she would shift her focus to “analytical work for CAO programs” and would no longer have managerial responsibilities. *944 Pl.’s First Am. Compl. ¶¶ 35-36, reprinted in J.A. 15. The OCAO’s Answer admits that Howard was told that the budget directorate was being abolished. Answer ¶ 35, reprinted in J.A. 38. Ms. Howard further avers that she was told that her reassignment was not “the result of performance issues.” Decl. of LaTaunya Howard ¶ 2, reprinted in J.A. 157.
By contrast, the Beard Affidavit avers that three factors led to Ms. Howard’s transfer:
(a) “Ms. Howard lacked the interpersonal skills to be an effective manager”;
(b) Ms. Howard “had analytical skills that were useful to the [OCAO]”; and
(c) “Ms. Howard made it difficult for [the CAO] to effectively support the legislative activities of the Committees on Appropriations and House Administration by not sharing information with other employees of the [OCAO] who assisted [the CAO] on budget matters, by not listening to other employees of the [OCAO] who assisted [the CAO] on budget matters, and by communicating to the Committee on Appropriations and others information that reflected her own budgetary preferences and views rather than the views of the CAO.”
Beard Aff. ¶ 13, reprinted in J.A. 97-98.
The OCAO asserts that following her involuntary transfer to Senior Advisor, Ms. Howard was responsible for implementing and analyzing various House policies and programs and for carrying out other duties as assigned by the CAO, including an assignment concerning the Government Contributions Account. See id. ¶ 12, reprinted in J.A. 96-97.
The parties’ contentions regarding the Account assignment diverge. Ms. Howard alleges that on February 13, 2009, the Deputy CAO asked her to work with a colleague “to set up the projection file for the [Account].” Pl.’s First Am. Compl. ¶ 38, reprinted in J.A. 16. In its Answer, the OCAO confirmed this. Answer ¶ 38, reprinted in J.A. 39. Ms. Howard avers that her colleague was uncooperative and refused to help her complete the assignment. See Pl.’s First Am. Compl. ¶43, reprinted in J.A. 16. Ms. Howard also avers that she did not have access to the database necessary to complete her task. Id. ¶ 57, reprinted in J.A. 18-19. She further alleges that she repeatedly attempted to speak with the Deputy CAO about her difficulties in getting her colleague to work with her and her inability to gain access to the electronic files she needed to complete the assignment. Id. ¶¶ 43-60, reprinted in J.A. 16-19. Ms. Howard alleges that she was terminated for insubordination based on her failure to complete this assignment, despite her efforts to do so. Id. ¶ 64, reprinted in J.A. 20.
The Beard Affidavit describes Howard’s 2009 assignment involving the Account differently, calling it a “one-time, catch-up assignment that resulted from the fact that the Account had not been analyzed and reconciled for several months, i.e., during a period when Ms. Howard, as Budget Director, was responsible for that work.” Beard Aff. ¶ 12, reprinted in J.A. 97. The OCAO and the Committees on Appropriations and House Administration needed this analysis and reconciliation completed to prepare for March 2009 budget hearings. See id. The Beard Affidavit states that, “[b]etween January and April 2009, Mr. Qureshi repeatedly instructed Ms. Howard to complete the work on the ... Account which he had assigned to her and, throughout this period, Ms. Howard repeatedly refused.” Id. ¶ 14, reprinted in J.A. 98. The Beard Affidavit further asserts that “Ms. Howard had the necessary *945 computer and data access to enable her to complete this task.” Id.
On April 14, 2009, the OCAO terminated Ms. Howard “because she had repeatedly refused to analyze and reconcile the ... Account as ... [she had been] repeatedly instructed.” Id.
B. The Decision Below
As noted above, the District Court allowed Ms. Howard’s demotion claim to proceed in a limited manner, holding that
Howard may seek to show that her communications with the [House committees] did not prompt her transfer by showing that such an explanation is contradicted by [the OCAO’s] other representations or not reflected in her performance evaluations or other documentation. But she may not attempt to show that those communications never took place or that they were other than as [the OCAO] described them. Nor may she in any other way probe the nature, extent or substance of those exchanges. This will likely make it more difficult to prove pretext, but that is the result that the Constitution requires.
Howard, 793 F.Supp.2d at 308.
At the same time, the District Court dismissed Howard’s termination and retaliation claims, accepting the Beard Affidavit’s account of the events surrounding Howard’s discharge and concluding that
dismissal of Howard’s termination claims reflects ... that the Clause protects internal legislative branch communications regarding specific legislative activities that are themselves within the scope of the Clause.
Id. at 311. Because the District Court found that Howard could not prove that she was not insubordinate without delving into protected legislative activities, it dismissed her termination and retaliation claims. Id. at 308-11.
II. ANALYSIS
A. Standard of Review
Because this case comes to us on an appeal from a motion to dismiss, we review the District Court decision de novo. This is true regardless of whether the OCAO’s motion is characterized as one to dismiss for lack of jurisdiction under Rule 12(b)(1), Fed.R.Civ.P. 12(b)(1), Herbert v. Nat’l Acad. of Sci., 974 F.2d 192, 197 (D.C.Cir.1992), or as one to dismiss for failure to state a cause of action under Rule 12(b)(6), Fed.R.Civ.P. 12(b)(6), Atherton v. D.C. Office of Mayor, 567 F.3d 672, 681 (D.C.Cir.2009).
B. The Speech or Debate Clause
In furtherance of separation of powers, the Framers sought to “provide some practical security for each [branch of government], against the invasion of the others.” The FedeRalist No. 48 (James Madison). The Speech or Debate Clause serves “to insure that the legislative function the Constitution allocates to Congress may be performed independently” without subjecting the legislature to “accountability before a possibly hostile judiciary.” Eastland v. U.S. Servicemen’s Fund, 421 U.S. 491, 502, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975). The Supreme Court has, “[without exception ... read the Speech or Debate Clause broadly.” Id. at 501, 95 S.Ct. 1813. Indeed, the Court has held that the protections of the Clause apply “not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself.” Gravel v. United States, 408 U.S. 606, 618, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972).
The Clause protects legislators from liability for all activities within the “sphere of legitimate legislative activity,” *946 Eastland, 421 U.S. at 503, 95 S.Ct. 1813, including all activities that are
an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.
Gravel, 408 U.S. at 625, 92 S.Ct. 2614. “Legislative activity” is broadly construed, encompassing not only anything “generally done in a session of the House by one of its members in relation to the business before it,” id. at 624, 92 S.Ct. 2614 (quotations and citation omitted), but also “conduct at committee hearings, preparation of committee reports, authorization of committee publications and their internal distribution, and issuance of subpoenas concerning a subject on which legislation could be had.” McSurely v. McClellan, 553 F.2d 1277, 1284-85 (D.C.Cir.1976) (quotations and citations omitted); see also, e.g., id. at 1296-97 (“[T]he subsequent use of ... documents by the committee staff in the course of official business is privileged legislative activity.”). The Clause also protects staff members’ preparations for legislative activities. See, e.g., Gravel, 408 U.S. at 628-29, 92 S.Ct. 2614.
As a general matter, the Speech or Debate Clause affords three distinct protections: (a) an immunity from “a civil or criminal judgment against a Member because [of] conduct [that] is within the sphere of legitimate legislative activity,” Doe v. McMillan, 412 U.S. 306, 312, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973) (quotations and citation omitted); (b) an eviden-tiary privilege, which, in relevant part, bars a party in a civil suit from “[r]eveal-ing information as to a legislative act” for use against a protected party, United States v. Helstoski, 442 U.S. 477, 490, 99 S.Ct. 2432, 61 L.Ed.2d 12 (1979); and (c) a testimonial and non-disclosure privilege that prevents a protected party from being compelled to answer questions about legislative activity or produce legislative materials, see, e.g., United States v. Rayburn House Office Bldg., 497 F.3d 654, 659-60 (D.C.Cir.2007).
C. The Fields Plurality Opinion Framework: Applying the Speech or Debate Clause in Employment Cases
In 1995 Congress enacted the CAA, 2 U.S.C. § 1301 et seq., which extends to certain legislative branch employees the protections of a number of remedial labor and employment statutes, including Title VII of the Civil Rights Act of 1964. See id. § 1302(a)(2); 42 U.S.C. § 2000e et seq. Among other protections, the CAA bars discrimination based on race, 2 U.S.C. § 1311(a)(1), and includes an anti-retaliation provision, 2 U.S.C. § 1317(a). The statute applies to any employee of the House of Representatives, but explicitly declines to waive any protections afforded by the Speech or Debate Clause. See id. §§ 1301(3)(A), 1413; see also Fields, 459 F.3d at 8 (CAA does not waive immunity or privileges afforded by the Speech or Debate Clause).
In Fields, the court, sitting en banc, offered a framework for determining when the Speech or Debate Clause requires dismissal of suits brought under the CAA. Unfortunately, the disposition in Fields includes no clear majority opinion. The plurality opinion authored by Judge Randolph, who was joined by then-Chief Judge Ginsburg, Judge Henderson, and Judge Tatel, states that “a Member’s personal office may be liable under the [CAA] for misconduct provided that the plaintiff can prove his case without inquiring into legis *947 lative acts or the motivation for legislative acts.” 459 F.3d at 17 (quotations and citation omitted). The opinion by Judge Rogers concurs in part, but expresses the view that the court should have left “open the question of how the Clause may limit evidence offered by parties in CAA litigation and whether the role of the Member’s personal office as the defendant under the CAA affects the application of the Clause.” Id. at 18 (Rogers, J., concurring in part and in the judgment). The opinion by Judge Brown, who was joined by Judge Sentelle and Judge Griffith, concurs in the judgment, but expresses a relatively narrow view of the Speech or Debate Clause. Id. at 21-33. (Brown, J., concurring in the judgment).
Judge Tatel’s separate concurring opinion aptly explains the principal differences between Judge Randolph’s plurality opinion and Judge Brown’s concurring opinion:
Judge Randolph’s opinion for the court holds that because neither of the cases before [the court in Fields ] rests on legislative acts, we have no basis for dismissing them. Judge Randolph then points out that the Speech or Debate Clause may preclude some evidence, that in many employment cases it may preclude the very evidence upon which plaintiffs seek to rely, and that if it does, the suit may not proceed. [Judge Brown’s] concurrence focuses on whether the defendant functions as a Member’s alter ego, arguing that wide variations in Speech or Debate Clause protection hinge on the answer to that question.
Id. at 18-19 (Tatel, J., concurring). Although there are four different opinions in Fields, none would embrace a result different from the judgment that we reach in this case. Our discussion of Fields focuses on Judge Randolph’s plurality opinion because, at least in the context of this case, it reflects the broadest view of the Speech or Debate Clause.
As noted in the Fields plurality opinion, there are two bases for the application of the Speech or Debate Clause to congressional employment actions. First, some employment decisions themselves constitute legislative acts and are therefore immune from suit under the Clause. Id. at 9-10 (plurality opinion). The parties in this case agree that neither Ms. Howard’s demotion nor her termination were themselves legislative acts.
Second, the Fields plurality opinion states that “[w]hen the [immunity component of the] Clause does not preclude suit altogether,” the evidentiary, testimonial, and nondisclosure privileges “still protect ] Members from inquiry into legislative acts or the motivation for actual performance of legislative acts.” Id. at 14 (quotations, citations, and alterations omitted). In “many cases,” the Fields plurality opinion notes, it may be impossible to explore the reasons for the challenged em-ploymeht action without discussing legislative acts and this may lead to the dismissal of CAA claims. Id. at 15-16; see also id. at 20 (Tatel, J., concurring) (non-disclosure protection under Clause could “preelude[ ] litigation” of some CAA claims). The question in this case is whether Ms. Howard can pursue her claims under the CAA without inquiring into legislative acts or the motivation for legislative acts.
In many employment discrimination cases, proof of “pretext” will be crucial to the success of the claimant’s case. See, e.g., Tex. Dep’t of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. 1817. Once a plaintiff has made out a prima facie case of discrimination and the employer has offered a nondiscriminatory explanation for its actions, the plaintiff must “demon *948 strate that the proffered reason was not the true reason for the employment decision.” Burdine, 450 U.S. at 256, 101 S.Ct. 1089. In order to show that an employer’s stated reason for a contested action was in fact a pretext for proscribed discrimination, an employee may need to adduce evidence regarding the employer’s work practices. In the context of cases arising under the CAA, this may require a complaining employee to seek evidence that implicates legislative matters, something that the Speech or Debate Clause may preclude.
The Fields plurality opinion addresses the challenges faced by a complaining party who seeks to prove pretext in support of a charge of discrimination under the CAA:
Suppose a plaintiff sues ... claiming her discharge violated the [CAA]. Suppose further that she is able to make out a prima facie case of discrimination.... If the employing office produces evidence — by affidavit, for example — that the personnel decision was made because of the plaintiffs poor performance of conduct that is an integral part of “the due functioning of the [legislative] process,” ... then for the plaintiff to carry her burden of persuasion, she must “demonstrate that the proffered reason was not the true reason for the employment decision”.... In many cases, the plaintiff would be unable to do so without “draw[ing] in question” the legislative activities and the motivations for those activities asserted by the affi-ant — matters into which the Speech or Debate Clause prohibits judicial inquiry....
Fields, 459 F.3d at 15-16 (citations omitted). The Fields plurality opinion explains that, in order to invoke the Speech or Debate Clause in such cases,
the employing office should include with [its] evidence an affidavit from an individual eligible to invoke the Speech or Debate Clause recounting facts sufficient to show that the challenged personnel decision was taken because of the plaintiffs performance of conduct protected by the Speech or Debate Clause.... The affidavit must indicate into what “legislative activity” or into what matter integral to the due functioning of the legislative process the plaintiffs suit necessarily will inquire.
With that submission, the district court must then determine whether the asserted activity is in fact protected by the Speech or Debate Clause. If it is, the action most likely must be dismissed .... We need not decide today whether a case in which the plaintiff uses evidence unrelated to legislative acts — such as ... evidence that at the time of discharge the [employer] offered a different reason for the employment action from the one alleged in the affidavit — to demonstrate that the defendant’s legislative explanation is pretext requires more questioning of the defendant’s legislative motives than the Speech or Debate Clause allows. We merely note that a plaintiff who seeks to prevail by quarreling with the defendant’s statements about activity protected by the Speech or Debate Clause must fail.
Id. at 16-17.
It is noteworthy that the Fields plurality opinion does not suggest that the District Court must accept as true all allegations contained in an affidavit from an individual eligible to invoke the Speech or Debate Clause; rather it instructs the District Court to determine whether the conduct that forms the basis of the plaintiff-employee’s suit is, in fact, protected by the Clause.
Importantly, nothing in the Fields plurality opinion prevents an employee who is pursuing an action under the CAA from *949 having “a fair opportunity to show that [the employer’s] stated reason [for the disputed adverse action] was in fact pretext.” McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. 1817. Given the strictures of the Speech or Debate Clause, a “fair opportunity” means that the complaining party may pursue her claim to the fullest, so long as she can prove her case “without inquiring into legislative acts or the motivation for legislative acts.” Fields, 459 F.3d at 17 (quotations and citation omitted).
If the lawsuit does not inquire into legislative motives or question conduct part of or integral to the legislative process, or if the district court determines that the asserted activity is not in fact part of or integral to the legislative process, then the case can go forward.
Id. at 16.
The OCAO suggests that an employee should be precluded from seeking to prove pretext once an individual who is eligible to invoke the Speech or Debate Clause has submitted an affidavit that offers a nondiscriminatory explanation for the contested employment action. Nothing in Fields or in any decision issued by the Supreme Court supports this view of the Speech or Debate Clause. Indeed, the only reasonable reading of the applicable precedent indicates that a plaintiff-employee may pursue her claims even after her employer has filed a Fields affidavit, provided that she does not contest her employer’s conduct of protected legislative activities and that she prove her allegations of pretext using evidence that does not implicate protected legislative matters.
In United States v. Brewster, for example, the Supreme Court allowed prosecution of a former Senator who accepted a bribe in exchange for legislative action. See 408 U.S. 501, 525-29, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). The Court explained that the act of taking the bribe was not legislative in nature, as the government could prove bribery without inquiring into whether the Senator had actually done the legislative deed the bribe was intended to induce. See id. The Court concluded that “[t]he only reasonable reading of the Clause, consistent with its history and purpose, is that it does not prohibit inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself.” Id. at 528, 92 S.Ct. 2531. Fields says nothing to the contrary.
D. The OCAO’s “Jurisdictional” Challenge
Before the District Court, the OCAO filed a motion asserting that Ms. Howard’s complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The OCAO has renewed this contention on appeal. The arguments offered by the OCAO are misguided.
“The Speech or Debate Clause operates as a jurisdictional bar when the actions upon which [a plaintiff seeks] to predicate liability [are] legislative acts.” Fields, 459 F.3d at 13 (quotations, citation and alterations omitted). As noted above, the parties in this case agree that the disputed adverse actions- — -Ms. Howard’s alleged demotion and termination — are not legislative acts. Therefore, there is no jurisdictional bar to this action. Accordingly, we will construe OCAO’s motion as one to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. See, e.g., Fraternal Order of Police Dep’t of Corr. Labor Comm. v. Williams, 375 F.3d 1141, 1143-44 (D.C.Cir.2004) (construing a Rule 12(b)(1) motion as one arising under 12(b)(6) where the court had jurisdiction to consider the case).
The OCAO’s jurisdiction argument relies on its contention that “when you marry the non-disclosure privilege ... with the likeli *950 hood that many of these complaints are going to have to be dismissed at this early stage, in effect what you’re talking about is another form of immunity.” Tr. of Oral Arg. at 32. In other words, the OCAO seeks to have this court create a new basis for immunity under the Speech or Debate Clause. We decline the invitation. See Brewster, 408 U.S. at 528, 92 S.Ct. 2531 (explaining that because “[t]he Speech or Debate Clause does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions,” a defendant “could not ... obtain[ ] immunity from prosecution by asserting that the matter being inquired into was related to the motivation for his [legislative actions]”).
The OCAO has advanced no credible argument to support the dismissal of Ms. Howard’s complaint under Rule 12(b)(6). “To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quotations and citations omitted). Ms. Howard’s complaint easily satisfies this standard. The OCAO seems to think it is entitled to a dismissal because Ms. Howard may face difficulties in proving her case without delving into protected legislative activities. See Br. of OCAO at 50-56. This is not a basis for dismissal of a case under Rule 12(b)(6). A court must “assess[ ] the legal feasibility of the complaint, but [may] not weigh the evidence that might be offered to support it.” Global Network Commc’ns, Inc. v. City of N.Y, 458 F.3d 150, 155 (2d Cir.2006).
Under applicable law, to get to trial, a plaintiff like Ms. Howard must “produce! ] sufficient evidence that, when taken together, could lead a reasonable jury to conclude that the [employer’s] proffered reason [for an adverse employment action] was pretext for racial discrimination.” Evans v. Sebelius, No. 11-5120, 716 F.3d 617, 620, 2013 WL 2122072, at *3 (D.C.Cir. May 17, 2013). Ms. Howard may not be able to meet this standard because of the strictures of the Speech or Debate Clause— which will bar her from inquiring into legislative motives or question conduct part of or integral to the legislative process — but this remains to be seen as the case proceeds.
E. Ms. Howard’s Demotion Claim
For the reasons indicated below, we find that the District Court had no basis under Rule 12(b)(1) or Rule 12(b)(6) to dismiss Ms. Howard’s claim that her involuntary transfer was a demotion based on her race or to grant judgment in favor of the OCAO on this issue. We agree with the District Court that Ms. Howard will be able to pursue this claim without probing protected legislative activities. Because the District Court allowed this claim to proceed, we affirm its decision and deny OCAO’s cross-appeal.
Ms. Howard alleges that at the time of her demotion, she was told that “a decision was made to ‘do away with’ the Budget Director title,” Pl.’s First. Am. Compl. ¶ 35, reprinted in J.A. 15, and Appellee’s Answer confirms this account. Answer ¶ 35, reprinted in J.A. 38. Ms. Howard further alleges that when she asked directly, she was told that her forced transfer was not the result of performance issues. Decl. of LaTaunya Howard ¶ 2, reprinted in J.A. 157. The OCAO does not dispute this assertion.
The Beard Affidavit submitted by the OCAO offers three completely different reasons for Ms. Howard’s forced transfer. *951 The first justification in the Beard Affidavit states that “Ms. Howard lacked the interpersonal skills to be an effective manager.” Beard Aff. ¶ 13, reprinted in J.A. 97. The second justification states that Ms. Howard “had analytical skills that were useful to the [OCAO].” Id. The parties agree that Ms. Howard’s analytical and managerial abilities do not implicate protected legislative matters. See Tr. of Oral Arg. at 60-61 (OCAO conceding that these justifications are non-legislative).
The third asserted justification in the Beard Affidavit includes three parts. It states that Ms. Howard was involuntarily transferred because she “made it difficult for [the CAO] to effectively support the legislative activities of the Committees on Appropriations and House Administration
• by not sharing information with other employees of the [OCAO] who assisted [the CAO] on budget matters,
• by not listening to other employees of the [OCAO] who assisted [the CAO] on budget matters, and
• by communicating to the Committee on Appropriations and others information that reflected her own budgetary preferences and views rather than the views of the CAO.”
Beard Aff. ¶ 13, reprinted in J.A. 97-98. Ms. Howard concedes that when she pursues her case before the District Court, she will be barred by the Speech or Debate Clause from disputing the accuracy of the OCAO’s assertion that she advanced her own budgetary views rather than those of the CAO. Were she to do this, she would be “quarreling with [the CAO’s] statements about activity protected by the Speech or Debate Clause,” which the Fields plurality opinion explicitly prohibits. 459 F.3d at 17.
Nonetheless, Ms. Howard surely may offer evidence that does not inquire into legislative acts or the motivation for legislative acts in order to demonstrate that the OCAO’s alleged reasons for her demotion are pretextual. For example, Ms. Howard may seek to prove pretext by showing that the reasons that the OCAO offered when she was demoted — that her position was being eliminated and that there were no underlying performance deficiencies — differ from the reasons that CAO asserts in the Beard Affidavit. See, e.g., Geleta v. Gray, 645 F.3d 408, 413 (D.C.Cir.2011) (noting that “shifting and inconsistent justifications are probative of pretext” (quotation and citation omitted)); Czekalski v. Peters, 475 F.3d 360, 367 (D.C.Cir.2007) (an employee may pursue her discrimination claim where she “proffered evidence from which a jury could have concluded that each of the” contemporaneous reasons her employer gave “was false, and that [the employer’s] subsequent clarifications represented nothing more than back-pedaling” such that “a jury could have concluded that the employer’s stated reason was pretextual” (quotation and citation omitted)). By the same token, the OCAO may be able to show that its contemporaneous explanations for Ms. Howard’s alleged demotion can be reconciled with the assertions made in the Beard Affidavit. These are matters to be addressed by the District Court in the first instance. The main point here is that the Speech or Debate Clause does not preclude Ms. Howard from pursuing her charge of race discrimination based on her alleged demotion.
F. Howard’s Termination and Retaliation Claims
For the reasons indicated below, we find that the District Court had no basis under Rule 12(b)(1) or Rule 12(b)(6) to dismiss Ms. Howard’s claims that her termination from the OCAO was motivated by her race and by retaliatory animus or to grant judgment in favor of the OCAO on these issues. Ms. Howard will be able to pursue these claims without probing *952 protected legislative activities. Because the District Court dismissed these claims, we reverse its decision, grant Ms. Howard’s appeal, and remand the case to allow these claims to proceed.
Ms. Howard avers that she was terminated for her failure to complete an assignment she describes as “set[ting] up the projection file for the [Account].” Pl.’s First. Am. Compl. ¶ 38, reprinted in J.A. 16. She alleges that she was not given “access to the [necessary] database,” id. at ¶ 57, reprinted in J.A. 18-19, to complete the task, and that the OCAO employee with whom she was supposed to work was uncooperative and prevented her from completing the assignment. See id. at ¶¶ 38-64, reprinted in J.A. 16-20. Ms. Howard thus alleges that she was set up to fail and that her April 2009 discharge “was improperly based upon race.” Id. at ¶ 66, reprinted in J.A. 20.
The Beard Affidavit takes issue with Ms. Howard’s account of the events leading to her discharge. The affidavit states that:
Between January and April 2009, Mr. Qureshi repeatedly instructed Ms. Howard to complete the work on the Government Contributions Account which he had assigned to her and, throughout this period, Ms. Howard repeatedly refused. Ms. Howard had the necessary computer and data access to enable her to complete this task. On or about April 14, 2009, Mr. Qureshi, with my approval, informed Ms. Howard that her employment was terminated because she had repeatedly refused to analyze and reconcile the Government Contributions Account as I, through Mr. Qureshi, had repeatedly instructed her to do.
Beard Aff. ¶ 14, reprinted in J.A. 98.
In sum, the CAO contends that Ms. Howard had access to all of the necessary files and resources and was terminated for insubordination. Ms. Howard, in turn, asserts that she lacked access to the necessary resources and support and was then terminated for failures caused by the OCAO. This is a classic “he-said-she-said” dispute, calling into question the credibility of Ms. Howard, Mr. Beard, and other members of the OCAO staff. The dispute has nothing whatsoever to do with protected legislative activities.
The Beard Affidavit’s account of the reasons for Ms. Howard’s termination certainly does not implicate legislative activities. To the contrary, the assertions in the Beard Affidavit regarding Ms. Howard’s discharge relate to Ms. Howard’s failure to perform an assigned job, not the particular duties associated with the job or the justifications for the assignment. OCAO asserts that the duties assigned to Ms. Howard would have involved protected legislative activities had she undertaken her assignment. This is irrelevant, however, because Ms. Howard has not raised any issue about those duties, nor does she propose to probe any aspect of the Account assignment or the motives giving rise to the assignment. Rather, Ms. Howard claims that she was assigned to perform a job and then denied the necessary resources and support to complete the work.
At Oral Argument, the OCAO conceded, as it must, that an investigation into activities in proximity to the legislative process does not necessarily require a probe into protected legislative activity. See Tr. of Oral Arg. at 48; see also Brewster, 408 U.S. at 528, 92 S.Ct. 2531. For example, a file clerk assigned to deliver legislative documents from one office to another, where all deliveries arrive in sealed envelopes, could be terminated for failing to deliver the envelopes as assigned. If the dispute surrounding the file clerk’s termination concerned instructions given to the clerk, the times of the pick-ups and deliveries of his cargo, his attitude, his attire, *953 what he said during his delivery route, or his race — and did not concern the contents of the envelopes — then any inquiry into the cause of his termination could proceed without impheating the Speech or Debate Clause. Even though the file clerk’s assigned tasks may be seen as importantly related to legislative activities, the tasks themselves are not legislative activities that implicate the Speech or Debate Clause.
Similarly, a food service worker whose principal responsibilities are for food preparation and service, as in Walker v. Jones, 733 F.2d 923 (D.C.Cir.1984), may inquire into the reasons for his termination without implicating any protected legislative activities. The Speech or Debate Clause would not bar the worker’s challenge to his termination, even if he worked in the House of Representatives’ dining room.
Ms. Howard’s situation is similar to these examples. Therefore, she may pursue her termination and retaliation claims. As the Court noted in Gravel, conduct that is merely related to or taken in support of protected legislative activities is not itself protected when relief can be afforded “without proof of a legislative act or the motives or purposes underlying such an act.” 408 U.S. at 621, 92 S.Ct. 2614. We find nothing in Ms. Howard’s termination and retaliation claims that implicate the Speech or Debate Clause. Her allegations concern access to resources and staff support. The details of her work assignment are not at issue. Therefore, there is little doubt that she can be afforded relief on her claims “without proof of a legislative act or the motives or purposes underlying such an act.” Id. The credibility issues that have been raised in connection with Ms. Howard’s termination and retaliation claims are properly left to the District Court in the first instance, as is routinely done in cases involving charges of race discrimination in employment.
III. CONCLUSION
For the reasons discussed above, we affirm the judgment of the District Court in part, reverse in part, and remand to allow all of Ms. Howard’s claims to proceed.