# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 23, 2014       Decided February 20, 2015

No. 13-5072

JUDY ANNE GORDON,
APPELLANT

v.

UNITED STATES CAPITOL POLICE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-671)

———

*Sara L. Faulman* argued the cause and filed the briefs for appellant.

*Frederick M. Herrera*, Attorney, United States Capitol Police, argued the cause and filed the brief for appellee. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON and PILLARD, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*:   This case involves the Family and Medical Leave Act ("FMLA" or the "Act"), which entitles eligible employees to take unpaid leave for family and medical reasons.   29 U.S.C. §§ 2601 et seq. Officer Judy Gordon sued her employer, the U.S. Capitol Police, alleging that it violated § 2615(a) by interfering with her exercise of FMLA rights and by retaliating against her for that exercise.

According to the complaint (from which all the facts below are drawn), Officer Gordon began suffering from bouts of depression following her husband's suicide.  The Capitol Police had in place (and evidently still do) a system allowing an employee to obtain a pre-approval of a "bank" of leave under the Act, without identifying specific start or end dates. Gordon applied for such a bank, also filing medical papers explaining that she was experiencing intermittent periods of severe and incapacitating depression.   In May 2011 the Capitol Police granted approval for a bank of 240 hours of leave.

A captain in the police later told Gordon that an upper-level manager had said he was "mad" about FMLA requests generally and had vowed to "find a problem" with hers.   In July 2011, two months after the grant of her leave request, police superiors ordered Gordon to submit to a "fitness for duty examination," and told her that the facts supporting her FMLA request were the basis for the order.  While she was waiting to take the examination, the police revoked her "police powers" and assigned her to administrative duties. The revocation and assignment deprived her of the opportunity to earn $850 by working two days of scheduled overtime.  She also spent $50 traveling to and from the exam. Ultimately, Gordon passed the fitness for duty examination and her police powers were reinstated.   The examination remains on her record, and she alleges that its presence will be

detrimental to her prospects for pay increases, promotions, and transfers.

Several months later, as the anniversary of her husband's death approached, Gordon's sister died. Soon after, an appointment with her therapist (itself rescheduled so that she could go to her sister's funeral) turned out to conflict with a three-day "active shooter training course" for which Gordon was scheduled. To resolve the conflict, Gordon made a request to draw on her bank of FMLA leave—her first such request. Her manager initially "became irate," refused the request, and demanded a "doctor's note." He later relented and granted the request.

Officer Gordon asserts claims of both "interference" and "retaliation," which the district court dismissed under Rule 12(b)(6). *Gordon v. U.S. Capitol Police*, 923 F. Supp. 2d 112 (D.D.C. 2013). We reverse.

\* \* \*

Our principal task here is the construction of 29 U.S.C. § 2615(a), which reads as follows:

(a) Interference with rights

(1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any

individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a). Section 2615(b) makes various kinds of interference with "proceedings or inquiries" unlawful but is not directly relevant to this case.

As it proves, there is a good deal of overlap in the coverage of § 2615(a)'s two subsections. The overlap is magnified by the Capitol Police's provision for "banking" family leave time—applying for a store of leave to be used in the future, and then applying for successive uses. After an employee acquires an entitlement for future drawdowns, acts of the employer that operate as retaliation for the initial request may also operate as interference with the later requests for use. Here we address retaliation first.

\* \* \*

For her retaliation claim Gordon relies mainly on § 2615(a)(2). The legislative history explains that this provision was "derived" from a Title VII provision that is universally taken as creating a retaliation claim, 42 U.S.C. § 2000e-3, and that the FMLA provision "is intended to be construed in the same manner." S. Rep. No. 103-3, at 34-35 (1993); H.R. Rep. No. 103-8, at 46 (1993). A comparison of the two provisions seems to confirm this link:

*Title VII, 42 U.S.C. § 2000e-3*: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ."

*FMLA, 29 U.S.C. § 2615(a)(2)*: "It shall be unlawful for any employer to discharge or in any other manner

discriminate against any individual for opposing any practice made unlawful by this subchapter."

Given the overlap it is unsurprising that the Supreme Court has referred to § 2615(a)(2) as an "antiretaliation" provision. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1333 (2011).

Nonetheless, we have also recognized a retaliation claim arising under § 2615(a)(1), *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1367-68 (D.C. Cir. 2000), a view with some support from other circuits.[1] Gordon also asserts her retaliation claim under that provision, albeit somewhat more obscurely.

*Gleklen* imported Title VII's prima facie case and burden-shifting regime to the FMLA retaliation context even as it relied on subsection (a)(1), a provision not modeled on Title VII. 199 F.3d at 1367-68 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). The elements of a prima facie case of FMLA retaliation are the well-known triad: (1) the employee "engaged in a protected activity under this statute"; (2) the employee "was adversely affected by an employment decision"; and (3) "the protected activity and the adverse employment action were causally connected." *Gleklen*, 199 F.3d. at 1368.

---

[1] See, e.g., *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1006-07 (8th Cir. 2012); *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 160 n.4 (1st Cir. 1998); see also *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir. 2012) (finding such a claim arising under the "sum" of §§ 2615(a)(1) and (a)(2)). But see *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 n.10 (9th Cir. 2001) (criticizing *Gleklen*'s application of Title VII doctrine to § 2615(a)(1) claims as a product of "semantic confusion").

As Gordon rightly argues, she need not plead facts showing each of these elements in order to defeat a motion under Rule 12(b)(6).  In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Court rejected such a pleading requirement for discrimination claims, emphasizing that it would be an odd requirement for a cause of action on which plaintiffs could prevail without proving the elements of a prima facie case—by producing direct evidence of discrimination.  *Id.* at 511.  We have observed that retaliation, too, can be proven by direct evidence rather than through the *McDonnell Douglas* prima facie case.  E.g., *Porter v. Natsios*, 414 F.3d 13, 17-18 (D.C. Cir. 2005).  The Capitol Police contend that *Swierkiewicz* was rejected by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  But *Iqbal* said nothing about the issue and *Twombly* actually reaffirmed *Swierkiewicz*.  *Twombly*, 550 U.S. at 569-70.  Although it is unnecessary for the application of *Swierkiewicz*, we note that Gordon pleads facts that if true would tend to directly show retaliatory purpose.

In any event, Gordon adequately pleaded each element of the prima facie case.  Gordon argues that her two requests for FMLA leave both constitute "protected activity."  The Capitol Police argue that such requests do not track the language of § 2615(a)(2), which refers to "opposing any practice made unlawful by [the FMLA]."  29 U.S.C. § 2615(a)(2).  But we need not resolve the adequacy of her claim under § 2615(a)(2) because Gordon also advances her retaliation claim under § 2615(a)(1), which contains no requirement that she "oppose any practice."

As to adverse action, we have not previously decided whether the "material adversity" standard articulated for Title VII in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68-70 (2006), governs in the context of FMLA claims.  As we've just seen, however, Congress derived at

least one of FMLA's retaliation provisions, § 2615(a)(2), from Title VII's retaliation provision, 42 U.S.C. § 2000e-3. Further, we have imported Title VII's burden-shifting and prima facie case for purposes of FMLA retaliation under § 2615(a)(1). *Gleklen*, 199 F.3d at 1367-68. Moreover, there is an overwhelming consensus among our sister circuits that FMLA retaliation claims are governed by the Title VII standard.[2]

On the other hand, it is conceivable that a lower standard might govern. In *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002), the Court held that FMLA claimants must demonstrate "prejudice" as defined by the statute's enumeration of remedies. *Id.* at 89. Because those remedies include "damages equal to the amount of . . . *any* actual monetary losses sustained by the employee as a direct result of the violation," § 2617(a)(1)(A)(i)(II) (emphasis added), *Ragsdale* seems to suggest that an FMLA plaintiff can satisfy

---

[2] Eight of our sister circuits have reached this conclusion. *Crawford v. JP Morgan Chase & Co.*, 531 F. App'x 622, 627 (6th Cir. 2013); *Wierman v. Caseys Gen. Stores,* 638 F.3d 984, 999 (8th Cir. 2011); *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011); *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir. 2008); *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 n. 2 (10th Cir. 2006); *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 337 (5th Cir. 2008); *DiCampli v. Korman Cmtys.*, 257 F. App'x 497, 500-01 (3d Cir. 2007); *Csicsmann v. Sallada*, 211 F. App'x 163, 167-68 (4th Cir. 2006). But see *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 507 n.2 (3d Cir. 2009). Of the three remaining, one relied on *Burlington* in analyzing an FMLA claim, *Foraker v. Apollo Grp. Inc.*, 302 F. App'x 591, 594 (9th Cir. 2008), and two noted its possible applicability without resolving the issue, *Roman v. Potter*, 604 F.3d 34, 43 (1st Cir. 2010); *Foshee v. Ascension Health-IS, Inc.*, 384 F. App'x 890, 891 (11th Cir. 2010).

his burden by identifying *any* monetary loss, no matter how slight.

We need not resolve the issue here. Assuming that the more demanding standard from *Burlington Northern* applies, Gordon's claim plainly satisfies that standard. She alleges that the Capitol Police's actions caused her to lose $850 in wages, incur travel expenses of $50, and diminish her prospects for pay increases, promotion, and transfer. It is plausible that a reasonable person in Gordon's position threatened with such losses might well be dissuaded from engaging in protected activity. See *Burlington Northern*, 548 U.S. at 68-70. For Gordon, the losses were the equivalent of three days' pay—not an overwhelming fraction of her annual wages, perhaps, but not one easily characterized as trivial or "de minimis," as the Capitol Police suggest.

As to the harms flowing from the fitness for duty exam, the three successive decisions in the case originating as *Hunter v. District of Columbia Child and Family Services Agency*, 710 F. Supp. 2d 152 (D.D.C. 2010), illustrate the critical difference between motions for dismissal and for summary judgment. In the initial decision, the district court found that an allegation of a mandatory fitness for duty examination was "sufficient to withstand the . . . motion to dismiss," insofar as "[t]he circumstances of this case are not known at this time because no discovery has taken place." *Id*. at 160 (using the quoted language on the subject of discrimination but invoking it by cross-reference as to retaliation). Only after the parties had the opportunity for discovery did the court find that imposition of the exam was not materially adverse, granting summary judgment and dismissing as "unsupported" plaintiff's general assertion that the exam impacted him "physically, mentally and financially, manifesting itself in insomnia, and anxiety." *Hunter v. District of Columbia*, 905 F. Supp. 2d 364, 378 (D.D.C.

2012). We affirmed by order. *Hunter v. D.C. Gov't*, No. 13-7003, 2013 WL 5610262 (D.C. Cir. Sept. 27, 2013). Gordon, of course, has alleged burdens beyond the examination itself, namely the $900 in total losses and the effect on her future employment prospects. Accepting these factual allegations as true, and in no way diluted by other allegations, we cannot say that imposition of the fitness for duty examination did not inflict a "materially adverse" harm. We note that all the cases relied on by the Capitol Police in relation to such mandates were summary judgment decisions.[3]

As to the causal link between the initial FMLA request and the mandate to undergo a fitness for duty examination, Gordon's complaint explicitly alleges such a link, claiming that one manager said he was "mad" about FMLA requests generally and vowed to "find a problem" with her request, while another became "irate" on receiving her request. In response, the Capitol Police pointed to Gordon's allegations regarding her "severe and incapacitating depression," and those regarding possession of firearms on duty, saying that in combination they demonstrated a public security risk and thus a non-retaliatory purpose for the fitness examination. The district court ruled that Gordon failed to provide "convincing evidence" that this non-retaliatory purpose was pretextual. *Gordon*, 923 F. Supp. 2d at 117. But under Rule 12(b)(6) we must accept the complaint's allegations as true and draw all reasonable inferences in favor of the non-moving party. See *Howard v. Office of Chief Admin. Officer of U.S. House of*

---

[3] See *Schoffstall v. Henderson*, 223 F.3d 818, 825-26 (8th Cir. 2000); *Semsroth v. City of Wichita*, 555 F.3d 1182, 1187 (10th Cir. 2009); *Baum v. Rockland Cnty.*, 161 F. App'x 62, 64 (2d Cir. 2005); *Stone v. Bd. of Dirs. of Tenn. Valley Auth.*, 35 F. App'x 193, 199 (6th Cir. 2002); *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 787 (7th Cir. 2007); *Franklin v. Potter*, 600 F. Supp. 2d 38, 67 (D.D.C. 2009).

*Representatives*, 720 F.3d 939, 950 (D.C. Cir. 2013). Judged by that standard, Gordon's allegations (including those especially identified in the Capitol Police's motion to dismiss) amply support the inference of retaliatory purpose and are thus enough to defeat the motion to dismiss. The district court's grant of the motion was error.

We note that the complaint charges other conduct alleged to interfere with Gordon's FMLA rights and/or retaliate against her for exercise of those rights, such as a "request" that Gordon execute a waiver authorizing her employer to directly contact her therapist. In view of the facts surrounding the mandated fitness for duty exam, we need not now assess those claims.

\* \* \*

To prevail on her "interference" claim under § 2615(a)(1), Gordon must show that "her employer interfered with, restrain[ed], or denied the exercise of or the attempt to exercise, any right provided by the FMLA and that she was prejudiced thereby." *McFadden v. Ballard Spahr Andrews & Ingersoll*, *LLP*, 611 F.3d 1, 6 (D.C. Cir. 2010) (quotations and citations omitted). Here, Gordon doesn't contend that she suffered any actual deprivation of FMLA leave, only that her employer attempted to discourage her from seeking or using such leave and that this attempt caused her harm. We recognized in *McFadden* that a plaintiff could succeed on an interference claim "without showing [that her employer] denied her any leave she requested." See *id.* at 3, 7. In that case, however, the employer's discouragement proved successful; it induced the employee to seek less leave than she was entitled to. See *id.* We have not previously addressed whether *ineffective* employer discouragement—such as is alleged by Gordon—could give rise to an interference claim.

The text of § 2615(a)(1) does not resolve the issue. The trio "interfere with, restrain, or deny" could be construed as requiring that the interference, restraint, or denial be effective—or not. The phrase "exercise of or the attempt to exercise" doesn't help, as the statute could be limited to successful efforts to interfere with either, or could encompass unsuccessful efforts as well.

We turn to prior judicial constructions of a closely related provision for guidance. Section 2615(a)(1) largely mimics § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1):

> *NLRA, 29 U.S.C. § 158(a)(1)*: "It shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title."

> *FMLA, 29 U.S.C. § 2615(a)(1)*: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

These provisions serve parallel functions in their respective statutory regimes: defining circumstances in which the employer prevents or chills employees' exercise of substantive rights created by other provisions. Compare 29 U.S.C. § 157, with 29 U.S.C. § 2612. Other courts have noted the similarity. See *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1123 (9th Cir. 2001); see also *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 147 n.9 (3d Cir. 2004). The two provisions are not, to be sure, identical. While victims of interference under the FMLA may file a district court action, the NLRA allocates exclusive enforcement authority to the National Labor Relations Board. Compare 29 U.S.C. § 2617, with 29 U.S.C. § 160. Also, the FMLA

provision substitutes "deny" for NLRA's "coerce," and adds protection for the mere "attempt to exercise" a right. Nonetheless, there is a substantial similarity between the two provisions, which is "a strong indication" that the two statutes should be interpreted similarly. *Northcross v. Bd. of Ed. of Memphis City Sch.*, 412 U.S. 427, 428 (1973).

By the time Congress enacted the FMLA, nearly every circuit had recognized that an employer action constituted unlawful interference under NLRA § 8(a)(1) if it had a "reasonable tendency" to interfere with employees' rights, whether or not it actually did so.[4] Where Congress "adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Lorillard v. Pons*, 434 U.S. 575, 581 (1978). The prior judicial constructions of NLRA § 8(a)(1) provide a strong indication that FMLA interference

---

[4] *Equitable Gas Co. v. NLRB*, 966 F.2d 861, 866 (4th Cir. 1992); *J. Huizinga Cartage Co. v. NLRB*, 941 F.2d 616, 621 (7th Cir. 1991); *NLRB v. Okun Bros. Shoe Store*, 825 F.2d 102, 107 (6th Cir. 1987); *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 816 (3d Cir. 1986); *NLRB v. Vought Corp.-MLRS Sys. Div.,* 788 F.2d 1378, 1381 (8th Cir. 1986); *NLRB v. Marine Optical, Inc.*, 671 F.2d 11, 18 (1st Cir. 1982); *TRW-United Greenfield Div. v. NLRB,* 637 F.2d 410, 415 (5th Cir. Feb. 20, 1981); *Bill Johnson's Restaurants, Inc. v. NLRB*, 660 F.2d 1335, 1341 (9th Cir. 1981); *Sw. Reg'l Joint Bd., Amalgamated Clothing Workers of Am., AFL-CIO v. NLRB*, 441 F.2d 1027, 1031 (D.C. Cir. 1970); *Irving Air Chute Co. v. NLRB*, 350 F.2d 176, 179 (2d Cir. 1965). (The Fifth Circuit opinion is also binding on the Eleventh Circuit. See *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).) The Tenth Circuit reached the same conclusion shortly after the enactment of the FMLA. *Manna Pro Partners, L.P. v. NLRB,* 986 F.2d 1346, 1354 (10th Cir. 1993).

claims do not require *effective* interference, but only employer conduct that *reasonably tends* to interfere with the exercise of FMLA rights. (As the complaint cites facts showing deliberate interference, we need not address the rather confusing authority on the issue of intent under § 8(a)(1).[5])

This view is further supported by our prior recognition of a retaliation claim arising under § 2615(a)(1) in *Gleklen*, 199 F.3d at 1367-68. Retaliation claims are not ordinarily defeated by a plaintiff's resolute insistence on her rights; they do not require any actual deprivation of statutory entitlements, but rather involve employer conduct designed to deter and/or punish the exercise of those rights. It would be anomalous to allow such claims to proceed under a backwards-looking "retaliation" theory under § 2615(a)(1) as we did in *Gleklen*, while barring them under a forward-looking "interference" one, such as Gordon advances here.

Accordingly, we hold that an employer action with a reasonable tendency to "interfere with, restrain, or deny" the "exercise of or attempt to exercise" an FMLA right may give rise to a valid interference claim under § 2615(a)(1) even where the action fails to actually prevent such exercise or attempt.

Gordon satisfies this element of her interference claim. She alleges that senior Capitol Police officials expressed hostility towards requests for FMLA leave generally and her request in particular. And, after she had obtained a bank of leave but before she had occasion to use it, the Capitol Police required her to take a fitness for duty exam which caused her

---

[5] See 1 J. Higgins, The Developing Labor Law 89-90 (6th ed. 2012) (characterizing the Supreme Court's position on the role of employer intent in § 8(a)(1) claims as "somewhat blurred" and "not . . . so clear") (collecting cases).

to suffer losses worth $900 plus unquantifiable harms to her future career prospects. Such a course of conduct would have a reasonable tendency to interfere with an employee's exercise of her FMLA rights.

Turning to the second element of her interference claim, "prejudice," we face another doctrinal ambiguity. As discussed above, *Ragsdale* seemed to define this requirement in minimalist terms by deriving it from the FMLA's enumeration of remedies. 535 U.S. at 89. Then again, interference claims based on ineffective discouragement might be required to satisfy the "materially adverse" standard from Title VII doctrine that many circuits have already applied to FMLA retaliation claims. See *Burlington Northern*, 548 U.S. at 68-70. It would seem anomalous for the same ineffective employer action to be subject to one definitional floor when characterized as retaliation, and another when characterized as interference, when both are of concern because of their chilling effect.

Once again, we need not resolve these questions here because even if the more stringent *Burlington Northern* standard governs, Gordon's pleadings satisfy that standard. Dismissal of the interference claim was therefore error.

\* \* \*

We reverse the order of the district court.

*So ordered*.