**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 7, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LISETH ORTIZ-RODRIGUEZ, a/k/a
Liseth Ortiz,

     Petitioner,

v.

LORETTA E. LYNCH, United States
Attorney General,

     Respondent.

No. 15-9526
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **GORSUCH**, and **McHUGH**, Circuit Judges.
_____

Liseth Ortiz-Rodriguez is a Mexican national who seeks review of a Board of

Immigration Appeals (BIA) decision affirming an immigration judge's (IJ) denial of

asylum and restriction on removal.[1]  We deny the petition for review.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Ms. Ortiz-Rodriguez also sought protection under the Convention Against Torture, but the IJ denied her claim, and Ms. Ortiz-Rodriguez abandoned it on appeal to the BIA.  *See* R. at 4 n.1; *id.* at 6.

Ms. Ortiz-Rodriguez entered the United States in 2008 on a 72-hour border crossing card. In 2010, the government charged her with removability. *See* 8 U.S.C. § 1227(a)(1)(C)(i). Ms. Ortiz-Rodriguez conceded the charge but applied for asylum and restriction on removal based on her political opinion and membership in a particular social group. She testified before the IJ that since leaving Mexico, three family members had been murdered, including a cousin who was a police chief. She also testified that another cousin had been kidnapped for ransom. Ms. Ortiz-Rodriguez did not know why her relatives had been killed, but she testified that "[t]he sicarios will kill people for no reason at all." R. at 133. She thought the crimes were unrelated and her cousin had been kidnapped for no reason.

Additionally, Ms. Ortiz-Rodriguez testified that she believed her cousin—the police chief—was murdered in a random act of violence because she was investigating the homicides of the other family members. But another witness (her cousin's mother in-law) testified that Ms. Ortiz-Rodriguez's cousin was actually killed nearly a year *before* the other two family members. This witness agreed, however, that the homicides were random acts of violence. She also claimed her own house had been shot at and painted with gang symbols.

Based on this evidence, Ms. Ortiz-Rodriguez sought relief on account of her political opinion and membership in a particular social group, which she defined as:

> Membership in the family of a decedent, including a law enforcement
> officer, and membership would cause her to suffer harm or including harm
> against her person and/or a chilling effect on any public activities by her

2

including political opinion and family is of note and family members have been targeted [sic].

*Id.* at 79.

The IJ found that this alleged social group was "disjointed" and lacked the particularity and social visibility necessary to qualify for protected status. *Id.* at 80. The IJ also ruled that Ms. Ortiz-Rodriguez failed to identify her political opinion. Noting that both Ms. Ortiz-Rodriguez's testimony and that of her witness indicated the murders were random acts of violence, the IJ concluded that Ms. Ortiz-Rodriguez failed to show a nexus between her fear of returning to Mexico and any protected grounds for relief.

The BIA affirmed. The BIA rejected Ms. Ortiz-Rodriguez's argument that her alleged social group was socially visible simply because her relatives' homicides "'were easily accessible to the public.'" R. at 5 (quoting Resp't's Br. at 7). The BIA also ruled that the particularity requirement could not be satisfied by arguing that "threats and 'repeated violence' amount to 'limiting factor[s] for this social group.'" *Id.* (quoting Resp't's Br. at 6). Nor could Ms. Ortiz-Rodriguez rely on her family background to constitute a particular social group, because both she and her witness had testified that the murders were random acts of violence. And although Ms. Ortiz-Rodriguez maintained she would be persecuted for her political opinion, the BIA observed that she never addressed the IJ's finding that she "provided no testimony on what her political opinion

3

is." *Id.* at 6. (brackets and internal quotation marks omitted). Ms. Ortiz-Rodriguez now seeks review. [2]

## II.

### A. *Briefing Deficiencies*

At the outset, we note that our review is hampered by serious deficiencies in Ms. Ortiz-Rodriguez's appellate briefing. For example, she fails to identify the relevant standard of review and instead asserts that "[t]he BIA erred or abused its discretion in finding [she] was not eligible for asylum or [restriction on] removal." Pet'r Br. at 5. But the Federal Rules expressly require that she provide "for each issue, a concise statement of the applicable standard of review." Fed. R. App. P. 28(a)(8)(B). Our review is further complicated by the fact that Ms. Ortiz-Rodriguez has filed in this court a near verbatim copy of the brief she filed in the BIA. This is not inconsequential because "[w]e consult the IJ's opinion only to the extent that the BIA relied upon or incorporated it." *Rodas-Orellana v. Holder*, 780 F.3d 982, 989 n.8 (10th Cir. 2015) (internal quotation marks omitted). "[W]here the BIA decision contains a discernible substantive discussion that stands on its own[,] . . . our review extends no further." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007) (internal quotation marks omitted). By merely recycling arguments aimed at the IJ's decision, Ms. Ortiz-Rodriguez fails to confront the BIA's specific rationale for denying relief. *Cf. Semsroth v. City of Wichita*, 555 F.3d 1182, 1186 n.5 (10th Cir. 2009) (recognizing that plaintiffs' appellate brief, which was "a

---

[2] The BIA granted voluntary departure and remanded to the IJ to make the necessary advisals. This limited remand has no effect on the finality of the removal order. *See Batubara v. Holder*, 733 F.3d 1040, 1042-43 (10th Cir. 2013).

verbatim copy of their summary judgment response" filed in the district court, "fail[ed] to address in a direct way the decision under review"). But the greatest deficiency in Ms. Ortiz-Rodriguez's brief is its failure to show any error in the BIA's decision.

### B. Merits

We review the agency's legal conclusions de novo and its factual findings for substantial evidence. *Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2013). Under the substantial evidence standard, "'administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013) (quoting 8 U.S.C. § 1252(b)(4)).

Because Ms. Ortiz-Rodriguez applied for asylum, she bore the burden of establishing that she is a refugee, "which requires proof that [her] 'race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting [her].'" *Id.* (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). One way to establish refugee status is "through evidence of a well-founded fear of future persecution on account of a protected ground." *Rodas-Orellana*, 780 F.3d at 986 (internal quotation marks omitted). The burden of proof for restriction on removal is higher than that for asylum, and thus an alien who fails to establish their eligibility for asylum necessarily fails to meet her burden for restriction on removal. *Id.* at 986-87.

Ms. Ortiz-Rodriguez attempted to show a well-founded fear of future persecution, but she failed to meet her burden. She admits that she and her witness testified that the murders were random acts of violence. *See* Pet'r Br. at 10. This forecloses relief because random criminality is not a protected basis upon which to grant asylum. *See Vatulev v.*

*Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003) ("[A]cts of common criminality or personal hostility . . . do not implicate asylum eligibility."). Although Ms. Ortiz-Rodriguez contends that she and her witness were confused by leading questions asked during the hearing, *see* Pet'r Br. at 10; R. at 28 (Resp't Br. to the BIA), the BIA rejected that argument because "no witness expressed a lack of understanding during such questioning," R. at 5. Ms. Ortiz-Rodriguez does not address this ruling or otherwise show the record compels a different conclusion.

Nor does she show any error in the BIA's conclusion that her alleged social group failed to qualify for protected status. An alien seeking relief on account of her membership in a particular social group must show the group is both particular and socially distinct. *Rodas-Orellana*, 780 F.3d at 990-91. "'Particularity' means the group cannot be indeterminate[,] too subjective, inchoate, and variable." *Id.* at 990 (internal quotation marks omitted). "[S]ocial distinction" means the group is "*perceived* as a group by society." *Id.* at 991. "In determining whether a group is socially [distinct], . . . the BIA considers whether citizens of the applicant's country would consider individuals with the pertinent trait to constitute a distinct social group, and whether the applicant's community is capable of identifying an individual as belonging to the group." *Id.* (internal quotation marks omitted).

Attempting to satisfy the particularity requirement, Ms. Ortiz-Rodriguez maintains that threats and "repeated violence" are "limiting factor[s] for this social group." Pet'r Br. at 8. But as the BIA recognized, without more, an alien may not circularly define her group as those who have been persecuted. *See Rreshpja v. Gonzales*, 420 F.3d

6

551, 556 (6th Cir. 2005) ("[A] social group may not be circularly defined by the fact that it suffers persecution."). Ms. Ortiz-Rodriguez adds that her family membership is another "limiting factor," Pet'r Br. at 8, but the BIA observed that the evidence showed her family members were victims of random violence, not targeted on any protected ground. Ms. Ortiz-Rodriguez also attempts to satisfy the social distinction requirement by insisting that the deaths of her relatives "were easily accessible to the public." *Id.* at 9. The BIA correctly rejected this argument, however, because there was no evidence that members of her community could identify her as belonging to the group. *See Rodas-Orellana*, 780 F.3d at 991. Again, Ms. Ortiz-Rodriguez offers no response.

Finally, Ms. Ortiz-Rodriguez contends she faces persecution on account of her imputed political opinion. But the BIA ruled that she failed to advance any "coherent discussion or specific examples showing how any political opinion has been imputed to her." R. at 6. The BIA also found that she failed to address the IJ's "finding that she provided no testimony on what her political opinion is." *Id.* (brackets and internal quotation marks omitted). Ms. Ortiz-Rodriguez does not challenge or respond to either of these rulings. And there is nothing to suggest that she faces persecution on account of her political opinions, whatever they may be; rather, both she and her witness testified that the homicides were random acts of violence.

The petition for review is denied.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

7