FILED
United States Court of Appeals
Tenth Circuit

February 17, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

GRETA SEMSROTH; KIM
WAREHIME; SARA VOYLES,

      Plaintiffs-Appellants,

v.

CITY OF WICHITA,

      Defendant-Appellee.

No. 08-3143

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 2:06-CV-02376-KHV)**

---

Submitted on the briefs:

Lawrence W. Williamson, Jr., Williamson Law Firm, LLC, Kansas City, Kansas,
for Plaintiffs-Appellants.

Kelly J. Rundell, Deputy City Attorney, Wichita, Kansas, for
Defendant-Appellee.

---

Before **MURPHY**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Plaintiffs Greta Semsroth, Kim Warehime, and Sara Voyles appeal[1] from the grant of summary judgment for the defendant City of Wichita on their claims of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. *See Semsroth v. City of Wichita*, 548 F. Supp. 2d 1203 (D. Kan. 2008). On de novo review, *see Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005), we agree with the district court's determination that none of the plaintiffs could show that she had suffered a materially adverse action, as required to make out a claim for retaliation and, on that basis, we affirm summary judgment for the City.[2]

This case is a sequel to an earlier Title VII suit by the same plaintiffs, in which they alleged discrimination, harassment, and retaliation in connection with their employment as officers in the Wichita Police Department. Another circuit panel recently issued a decision that affirmed in part and reversed in part the entry of summary judgment for the City on those claims. *See Semsroth v. City of Wichita*, No. 07-3155, 2008 WL 5328466 (10th Cir. Dec. 22, 2008). While participants in the two cases overlap, the retaliation claims under review here are

---

[1]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[2]    As to plaintiff Semsroth, the district court also held that she had failed to show a triable issue as to whether her alleged adverse action had any connection to prior protected activity. The stated basis for our disposition of this appeal makes it unnecessary to consider this alternative rationale for rejecting her claim.

subsequent in time and distinct as to both the alleged protected activities of the plaintiffs and the alleged retaliatory acts of their supervisors at the Department. Moreover, the dispositive issue on this appeal, concerning the proper legal characterization and effect of the alleged retaliatory acts, is not dependent upon or affected by events in the earlier suit. After setting out the general legal standards governing this issue, we will address each plaintiff's claim in turn.

To establish a prima facie claim for retaliation, a plaintiff must show that (1) she engaged in protected opposition to discrimination; (2) a reasonable person would have found her employer's subsequent action to be materially adverse; and (3) a causal connection exists between her protected activity and the employer's action. *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006). As to the critical second step here, an employer's actions are "materially adverse" if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006). This standard focuses on the employer's retaliatory action, not the underlying discrimination the employee had opposed. *Id.* at 69-70. And while the standard is sensitive to the particular circumstances of each case, *id.* at 69, it prescribes an objective inquiry that does not turn on a plaintiff's personal feelings about those circumstances, *id.* at 68. Each case is "judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 71 (quotations omitted).

In keeping with this case-specific and contextually sensitive inquiry, job duty assignments—which are at the center of the claims pursued here by Officers Warehime and Voyles—are neither automatically actionable nor categorically non-actionable. *Id*. We take a case-by-case approach, asking whether the record contains objective evidence of material disadvantage or merely the bald personal preferences of the plaintiff. *McGowan*, 472 F.3d at 742-43. If only the latter, the retaliation claim fails. *Id.* at 743.

### Officer Warehime

"Viewing, as we must, the evidence in the light most favorable to the plaintiffs as the parties responding to a summary judgment motion, the facts before us are these." *Sydnes v. United States*, 523 F.3d 1179, 1181 (10th Cir. 2008). Officer Warehime was at all relevant times a school resource officer. Her retaliation claim concerns a transfer she sought from Maybury Middle School to Hamilton Middle School for the 2005–06 school year. Sometime before June 21, 2005, after an initial misunderstanding about a status disqualification,[3] she was told she would receive the transfer. On June 21, however, she filed an unrelated

---

[3] She had just transferred to Maybury in August 2004. So, when she first applied for the position at Hamilton in early June 2005, she was told she was disqualified by the rule that officers should serve at least a year in an assignment before transferring to another. Shortly thereafter, however, she was informed that she would receive the transfer, as her supervisors realized that she would not start at Hamilton until August (her one-year anniversary date for the Maybury assignment), when new school assignments take effect.

complaint about sex discrimination in how the Department handled suggestions from officers regarding new projects, and within days her transfer request was denied. Finally, after she contacted the union (Fraternal Order of Police) about pursuing a grievance, the Department reversed itself again and granted her the transfer to Hamilton by the time the new school-year assignments were actually carried out in August.

The district court noted two distinct deficiencies in Officer Warehime's claim that the denial of her transfer request constituted a materially adverse action: she offered nothing but her personal preference to distinguish the Hamilton position from the Maybury position, and the transfer was in any event granted by the time it could have taken effect. Thus, "[a]t most, Warehime temporarily lost the opportunity to transfer to a position which she subjectively preferred," which "is insufficient as a matter of law to establish that Warehime suffered a materially adverse action." *Semsroth*, 548 F. Supp. 2d at 1213.

Officer Warehime has not pointed to any evidence suggesting an objective advantage to the position she preferred, a deficiency this court found fatal to the retaliation claim in *McGowan*. *See* 472 F.3d at 743. And, even if she had, the fact that she received the position when assignments for the school year actually took effect would negate the force such evidence would have in the material-adversity analysis; her receipt of the position (with any attendant advantages) was not even delayed, much less denied. *See generally Mitchell v.*

-5-

*Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (noting adverse proposal has to be implemented to count as adverse *action*).[4]  It is certainly possible that such a temporary loss of a future professional expectation could have adverse *collateral* consequences, relating to the disruption and expense potentially caused by the need to accommodate a shifting future.  But even if consequential harms of this sort were cognizable in the *Burlington Northern* inquiry (a point we need not decide), Officer Warehime has not asserted such harm, let alone substantiated it by reference to record evidence.

Rather, Officer Warehime argues that the denial of her transfer request was materially adverse despite the later reversal of the decision, because "a reasonable employee [would] be dissuaded from making a complaint if they know that they would have a position taken away from them (even though they may get it later)." Aplt. Br. at 19.  But this clearly mischaracterizes the relevant circumstances, by treating the initial denial as a completed adverse action in and of itself, in isolation from the favorable action actually taken on the request.  We know of no authority, and Officer Warehime cites none, for truncating the assessment of an employer's response to an employee request in this artificial fashion.  A more accurate formulation of the *Burlington Northern* inquiry here is:  would a

---

[4]     While *Mitchell* was decided prior to the Supreme Court's clarification of the material-adversity standard in *Burlington Northern*, its commonsense distinction between an unimplemented decision and an action is not affected by *Burlington Northern*.

reasonable employee be dissuaded from making a complaint if she knew that her request for a transfer would be temporarily denied but ultimately granted before the transfer was to take effect?  We agree with the district court that the answer to this inquiry is no.  Accordingly, we affirm the grant of summary judgment for the City on Officer Warehime's claim.

### Officer Voyles

Officer Voyles alleges that, in retaliation for her participation in plaintiffs' prior discrimination suit, her supervisor denied her a light-duty position with a gang unit that she had requested to accommodate her pregnancy, assigning her to other light-duty positions instead.  Again, the district court rejected this claim at the material-adversity step of the prima facie case.

The district court fully explained Officer Voyles' fatal lack of proof on this element of her case:

> [T]he denial of a transfer constitutes a materially adverse action only if the employee presents some evidence beyond her subjective desire for the position. *McGowan*, 472 F.3d at 743.  Here, Voyles' brief in opposition to the motion for summary judgment reflects nothing more than a purely subjective preference for the gang unit. *See Plaintiff's Response* (Doc. #91) at 14 [Aplt. App. at 109] ("no reasonable employee would complain about a supervisor harassing them or make any other complaint if it will affect their position of choice"). . . .  [T]he record contains no evidence that the gang unit was objectively preferable—in terms of pay, benefits or work load—to the light duty assignments which Voyles received.  In fact, Voyles eventually received a community policing position in which she had previously expressed interest.

*Semsroth*, 548 F. Supp. 2d at 1214 (footnote omitted).  On appeal, Officer Voyles

-7-

continues to ignore this patent deficiency in her case.[5]  We affirm the entry of summary judgment for the City for the reasons stated by the district court.

## Officer Semsroth

Officer Semsroth's retaliation claim does not involve a disputed work assignment.  She asked for and received a light-duty position in the summer of 2005 based on PTSD, for which she was seeing a private psychologist.  Two supervisors, Captain Allred and Lieutenant Bannister, informed her that the Department's psychologists would be made available to her without charge if she wished, but the choice was hers; she was not required to undergo any testing or treatment in connection with her request for light-duty assignment.  She was also told that any counseling would be kept confidential.  When she met with one of the psychologists (Dr. Bowman), she learned that Lieutenant Bannister had asked for a fitness-for-duty exam, but she did not discontinue the appointment.  Later, Dr. Bowman reported to Lieutenant Bannister that Officer Semsroth was not fit for duty and Bannister, in turn, reported this to Captain Allred.  In the end, however, Captain Allred took no action based on Dr. Bowman's opinion and even assigned Officer Semsroth back to patrol duty a short time later at her request.

---

[5]     In this respect (and most others), plaintiffs' appellate brief is a verbatim copy of the their summary judgment response below.  *Compare, e.g.*, Aplt. App. at 108-11 *with* Aplt. Br. at 15-19.  It thus inherently fails to address in a direct way the decision under review and, as a result, does not effectively come to grips with the district court's analysis of the deficiencies in their case.

Officer Semsroth's personnel file contains no reference to the fitness-for-duty exam or Dr. Bowman's resultant opinions.

Officer Semsroth claims that she suffered a materially adverse action in retaliation for her past opposition to sex discrimination by being subjected to the fitness-for-duty exam without cause. The district court again granted summary judgment to the City on the ground that a materially adverse action could not, as a matter of law, be established on the facts of record:

> These facts clearly establish that Semsroth met with Dr. Bowman at her own discretion. During the appointment, Semsroth apparently learned that her lieutenant had instructed Dr. Bowman to administer a fitness for duty examination, but the record contains no evidence that the appointment was ever mandatory or that Semsroth was formally required to submit to a fitness for duty examination.
>
> The uncontroverted evidence demonstrates that the Department took no action toward Semsroth as a result of her visit with Dr. Bowman or any fitness for duty examination which he administered. The fact that the examination never became a part of Semsroth's performance evaluations and personnel file reflects the confidential nature of the examination. Under these circumstances, no reasonable jury would find that the administration of a fitness for duty examination in the context of a voluntary appointment would dissuade a reasonable person from making a discrimination complaint, particularly because the City took no action as a result of the examination.

*Semsroth*, 548 F. Supp. 2d at 1211. We agree. The voluntary nature of the appointment with Dr. Bowman drains the incident of any material adversity that a mandatory fitness-for-duty test might present. Again, plaintiffs' appellate brief utterly fails to engage this critical aspect of the district court's analysis. Instead, it presents Officer Semsroth's position by way of a rhetorical question that just

reveals the hole in her argument: "What reasonable employee would want to be *sent for* a fit for duty test because they complain about discrimination? None." Aplt. Br. at 17 (emphasis added). This question fails to come to grips with the fact that *she chose* to visit Dr. Bowman and to continue that visit after learning it would involve a fitness-for-duty exam.

In sum, none of the plaintiff officers demonstrated a triable issue on the critical element of materially adverse action. The City was therefore entitled to summary judgment, regardless of whether any of their supervisors may have acted from a retaliatory motive.

The judgment of the district court is AFFIRMED.