FILED
United States Court of Appeals
Tenth Circuit

April 15, 2024

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

SABRINA S. OVERFIELD,

    Plaintiff - Appellant,

v.

STATE OF KANSAS,

    Defendant - Appellee.

No. 23-3057
(D.C. No. 5:21-CV-04093-JWB)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **TYMKOVICH**, and **ROSSMAN**, Circuit Judges.[**]
_____

Sabrina Overfield appeals an order granting summary judgment to the State of

Kansas on her Title VII hostile work environment and retaliation claims.  Her claims

arise from her work as a court reporter in Parsons, Kansas, and her interactions with

court personnel.  We agree with the district court's conclusion that Ms. Overfield

failed to provide evidence sufficient to show that the conduct she challenged

occurred because of her sex.  Similarly, we agree that Ms. Overfield failed to provide

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.

evidence sufficient to show that she suffered an adverse employment action after filing misconduct complaints with the Kansas judicial disciplinary office. Given the State's well-supported motion for summary judgment, judgment as a matter of law on both claims was appropriate. Exercising jurisdiction under 28 U.S.C. § 1291, we therefore affirm.

## I. Background

### A. Factual History

For purposes of this appeal, all inferences are construed in the light most favorable to Ms. Overfield based on the summary judgment record developed in the district court.

#### 1. Interactions with Judge Johnson

Ms. Overfield worked as a court reporter for District Court Judge Jeffery Jack at the Parsons Judicial Center in Kansas. Five women typically worked in the clerk's office. Besides the judges at Parsons, no male employees worked in the district court's clerk's office. In 2017, Judge Fred Johnson joined the court. According to Ms. Overfield, people at the Eleventh Judicial District found working with Judge Johnson challenging. One example is Tasha Thurman. She was hired in 2017 on the condition that she complete the court reporter certification program within one year. She did not, and Judge Johnson harshly addressed Tasha Thurman several times, causing her considerable distress. These reprimands led to Ms. Thurman filing a complaint against Judge Johnson with the Kansas Commission on Judicial Conduct

2

(KCJC). Having not completed the program, Tasha stopped working for Judge Johnson in 2018 and was replaced by Tammy Thomas.

Further, Terri Thurman, Tasha Thurman's mother and the District Court Clerk of the 11th Judicial District, also filed a complaint about Judge Johnson's behavior. In May 2019, Judge Johnson questioned Terri Thurman about her retirement plans. When Terri Thurman replied that she had not set a retirement date, Judge Johnson harshly criticized her for previously telling him and Judge Jack that she would retire in July. Judge Jack—a fellow judge and Ms. Overfield's supervisor—experienced similar conflicts with Judge Johnson. As Ms. Overfield testified, Judge Johnson would "speak to" Judge Jack and "put walls up" to Judge Jack, just like he did with Terri Thurman.

After Judge Jack retired in January 2020, Ms. Overfield had a challenging experience with Judge Johnson. After discussing with Ms. Overfield potential candidates to replace Judge Jack, Judge Johnson insisted Ms. Overfield sit down and discuss why she would not help him in his courtroom and why Ms. Overfield had a problem with Tammy Thomas—his court reporter. Up until that point, and for reasons unknown, Ms. Overfield had been keeping notes on Ms. Thomas's work activities, including instances where Judge Johnson gave her permission to travel, take time off, leave early, or work remotely. When Judge Johnson asked her about the issue, Ms. Overfield replied, "There [was] no communication" and that she "need[ed] to be helped," but denied having a problem with Ms. Thomas. The conversation escalated, and Judge Johnson's subsequent tone and behavior toward

3

Ms. Overfield made her uncomfortable, so she left Judge Johnson's chambers. Ms. Overfield and Judge Johnson reported the incident to District Court Administrator Mac Young—stationed in Pittsburg—who advised them to document what happened.

The next day, Ms. Overfield entered work and locked her office door and the door to the visiting judge's chambers. Judge Johnson testified that he attempted to leave mail for the visiting judge in the visiting judge's chambers. When Judge Johnson discovered that the door to the visiting judge's chambers was locked, he knocked on the door. He then knocked on Ms. Overfield's door, requesting her to unlock the doors. She did not. Judge Johnson said he would call Mr. Young and left. Ms. Overfield called Mr. Young, and he told her that she needed to unlock the door. That afternoon, Mr. Young emailed Ms. Overfield, among other things: "I am told that you have locked the door to the Judge's office as well as your own. Not appropriate."

### 2. Formal Complaints

The next day, Ms. Overfield emailed Mr. Young, carbon-copying all the Eleventh Judicial District judges, detailing the incidents with Judge Johnson. Someone later submitted Ms. Overfield's complaint to the Kansas Commission on Judicial Conduct (KCJC). Shortly after, Tasha and Terri Thurman also filed complaints against Judge Johnson with the KCJC. After reviewing the complaints, the KCJC concluded that human resources should handle the issues administratively as personnel matters. The KCJC also found insufficient information to establish that Judge Johnson violated judicial conduct codes.

4

### 3. Administrative Order No. 166: Transfer Order

The court transferred Judge Johnson to another courthouse in January 2020. The chief judge entered Administrative Order No. 166:

> Beginning January 27, 2020, Hon. Fred W. Johnson (D03) will be sitting in Oswego for office hours and court until further order.

Aplt. Br. at 13 (citing Aplt. App. at 33). Judge Johnson testified that he had no problems with the order because he lived in Oswego and could conveniently work there. He understood the order to prohibit him from conducting business in the Parsons courthouse and recalled coming to Parsons only to retrieve files or similar items.

In January 2021, Ms. Overfield emailed Judge Lynch and Mr. Young, expressing her concerns about Judge Johnson's plan to return to the Parsons courthouse. Ms. Overfield stated in her email that she "did not feel safe working in the Parsons courthouse when [Judge Johnson] would be there." A few days later, she followed up with another email—this time only to Mr. Young. In this latest email, Ms. Overfield told Mr. Young she was "concerned" that she had not yet received a response from him or Judge Lynch regarding her previous email. And Ms. Overfield shared that she "learned through other sources" that Judge Johnson intended to work in the courthouse over several days. She stated that she "fe[lt] very uneasy" about Judge Johnson working there, as well as "not having any notification from [Mr. Young] or Judge Lynch or [the Office of Judicial Administration] for that matter." Ms. Overfield and Terri Thurman planned to work together at Parsons, but Ms.

5

Overfield did not consider it "wise" to do so. Ms. Overfield stated that she "d[id] not feel comfortable" being "alone" in the office with Judge Johnson, even with another judge present.

### 4. *Administrative Order No. 175: Rescission Order*

On February 20, 2021, Judge Lynch issued Administrative Order No. 175, rescinding Administrative Order No. 166 and thus removing the formal administrative encumbrance to Judge Johnson working from Parsons. He explained that "in order for orderly functioning of the Court to proceed, [he] felt like it was no longer advisable to direct [Judge Johnson] to be in Oswego all the time." Judge Lynch testified that "an arrangement" allowed Ms. Overfield and Terri Thurman to work remotely on days when Judge Johnson held court at the Parsons courthouse.

In March 2021, Judge Johnson returned to the Parsons courthouse after a year-long absence. According to Ms. Overfield, Judge Johnson "refused to communicate with [her]" about monthly staff Zoom meetings and other meetings related to court proceedings and hearings. Although Terri Thurman "told [her]" about these meetings "[e]very time," Ms. Overfield contends that Judge Johnson's lack of communication affected her work performance because it was "hard to run a courthouse without communication with all staff."

Furthermore, Ms. Overfield testified that she faced challenges while working from home, such as using her personal phone for work, performing her tasks because of being away from the courthouse, and hearing issues because of the poor courtroom sound system.

### 5. Performance Evaluation

By the summer of 2021, Ms. Overfield's 2019-2020 evaluation remained incomplete. Mr. Young discussed this with Allyson Christman—Director of Personnel for the Official of Judicial Administration—and agreed he should decline to evaluate Ms. Overfield because he was named in Ms. Overfield's KHRC complaint. Judge Lynch also declined, citing a lack of knowledge of Ms. Overfield's work. Judge Lynch discussed Ms. Overfield's evaluation with Judge Stockard—a new judge and Ms. Overfield's boss—and Judge Stockard expressed concern that he was still too new to the bench to evaluate Ms. Overfield properly. Judge Fleming declined to complete the evaluation as well.

So Mr. Young contacted Ms. Christman. She advised him that an "evaluation document must be completed at some point by someone . . . even if all else is simply marked successful." After asking for and receiving Ms. Overfield's consent for him to perform the evaluation, Mr. Young did so. Consistent with Ms. Christman's advice, Mr. Young gave Ms. Overfield a successful rating in all categories. A "successful" rating suffices for an employee to receive a pay increase and longevity bonus, both of which Ms. Overfield received in 2020 and 2021 in a timely manner. Ms. Overfield disagreed with the successful rating and challenged the evaluation. Judge Fleming ultimately revised the evaluation rating from "successful" to an overall "beyond expectations." The evaluation was not included in Ms. Overfield's employment records. In the fall, Ms. Overfield left to work as a court reporter for another judicial district.

### B. Procedural History

Ms. Overfield sued the State of Kansas, alleging a hostile work environment claim based on Judge Johnson's conduct and a retaliation claim based on Judge Lynch's order rescinding Administrative Order No. 166.  The State moved for summary judgment on both claims.  The district court granted the State's motion for summary judgment.  This appeal followed.

## II. Discussion

We review de novo an order granting summary judgment, applying the standard in Federal Rule of Civil Procedure 56(a).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit."  *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013) (internal quotation marks omitted).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way."  *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1250 (10th Cir. 2021) (internal quotation marks omitted).  "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Tabor*, 703 F.3d at 1215.  If "the non-movant fails to provide sufficient evidence supporting a necessary element" of the claim, then "the movant is entitled to summary judgment as a matter of law" on the claim.  *Throupe*, 988 F.3d at 1250.

8

While we review the record de novo, "we conduct that review from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

### A. Hostile work environment

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment because of her sex. *See* 42 U.S.C. § 2000e-2(a)(1). Besides prohibiting discrete acts of discrimination, Title VII has been interpreted to prohibit "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e–5(e)(1)).

To successfully oppose a motion for summary judgment on a sex-based hostile work environment claim, a plaintiff must produce evidence that establishes a genuine dispute of material fact as to whether: (1) the plaintiff was discriminated against because of sex; and (2) the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of the plaintiff's employment. *Throupe*, 988 F.3d at 1251.

To show discrimination because of sex, a plaintiff need only put forth evidence that sex was a "motivating factor." 42 U.S.C. § 2000e-2(m). To do this, a plaintiff

may cite evidence of abusive conduct that is "facially sex-based." *Throupe*, 988 F.3d at 1251. Facially sex-neutral abusive conduct, by contrast, may permit an inference of sex-based animus when that conduct is viewed in the context of other "overtly" sex-based discriminatory conduct. *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999). "If a jury could reasonably infer the conduct was related to the plaintiff's sex, then it is for the fact finder to decide whether such an inference should be drawn." *Throupe*, 988 F.3d at 1251 (cleaned up). In either case, summary judgment is appropriate if the plaintiff fails to provide evidence sufficient to support an inference about the defendant's sex-related motives. *See id.*

### 1. Discrimination against the plaintiff because of sex

Ms. Overfield contends that a jury could find that Judge Johnson "treats men and women differently in the workplace." Aplt. Br. at 24 (quoting *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)). She cites evidence that Tasha Thurman and Terri Thurman experienced abusive conduct from Judge Johnson. *See* Aplt. Br. at 24 (citing Aplt. App. at 215-226). In addition to those concededly sex-neutral incidents, Ms. Overfield cites her declaration, where she asserts that: (1) she "observed Judge Johnson interact with male employees in the workplace" and that Judge Johnson "always treated [those] male employees with respect;" (2) she "never observed Judge Johnson treat any male employee in the same harassing and abusive manner which he treated [her], Terri Thurman, and Tasha Thurman;" (3) and there is "no evidence in the record that Judge Johnson treated any male employee in a harassing and abusive manner." Aplt. Br. at 7 (citing Aplt. App. at 208). Ms.

10

Overfield argues that, from this evidence, a jury could infer that sex was a motivating factor in Judge Johnson's conduct toward her. *See* Reply at 5.

We disagree. We conclude that Ms. Overfield has not provided evidence sufficient to permit a jury to infer sex-based motivations from exclusively sex-neutral actions for three reasons.

*First*, Ms. Overfield provided no evidence that the male employees she referred to were similarly situated to her. A plaintiff establishing "discriminatory animus" with evidence of differential treatment "bears the burden of showing that the comparison is legally relevant"—that is, that the employees are "similarly situated." *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1182 (10th Cir. 2002). Similarly situated employees share a supervisor, must follow the same standards, and must engage in comparable conduct. *See McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006).

Here, Ms. Overfield's declaration asserts that Judge Johnson engaged in abusive conduct towards three specified female employees and did not engage in such conduct towards an unspecified group of male employees. An initial issue is that Ms. Overfield did not dispute that no male employees worked in the clerk's office where she was employed. *See* Aple. Br. at 5 (citing Aplt. App. at 121). But more to the point: Ms. Overfield's claims lack factual support. She fails to identify any male employees, provide specific examples of their treatment, or demonstrate how they were otherwise similarly situated to her. Thus, her assertions about dissimilar treatment are "conclusory." *See, e.g., Bird v. W. Valley City*, 832 F.3d

11

1188, 1206 (10th Cir. 2016) (assertion that "some of the men don't work as hard but never get in trouble for it" is a conclusory statement unsupported by any examples). We may not "presume" that Ms. Overfield's assertions embrace the "specific facts" necessary to oppose a well-supported motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). And without those specific facts, "the jury is not entitled to draw an inference of discrimination" from Ms. Overfield's evidence purporting to show differential treatment. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007).

The summary judgment record confirms this result. Besides judges, two male employees are part of the equation: Mac Young and Shaun Higgins. It is undisputed that Mr. Young was a "Court Administrator"—a title different than Ms. Overfield's—who was "stationed in Pittsburg"—a different district than Ms. Overfield. Aplt. App. at 144; *see Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1175 (10th Cir. 1996) (explaining that equivocal evidence of job descriptions failed to establish employees were similarly situated for comparative purposes). Mr. Higgins is closer to the mark—he, like Ms. Overfield, worked as a court reporter. But Mr. Higgins was also stationed in Pittsburg, *see* Aplt. App. at 121, and only "cover[ed]" at Parsons when the courthouse "needed coverage on jury trials." Aplt. App. at 159. *See Glapion v. Castro*, 646 F. App'x 668, 671 (10th Cir. 2016) (concluding that a male employee stationed in a different region cannot be deemed similarly situated and thus was ineligible to serve as a comparator in a sex-based hostile work environment claim). In any event, the record contains no evidence that

12

either interacted with Judge Johnson at similar frequencies or under the same circumstances as Ms. Overfield.

*Second*, Ms. Overfield neither provided circumstantial evidence linking sex-neutral actions to sex-based bias nor disputed non-discriminatory reasons for sex-neutral actions, precluding a jury from inferring discrimination. In other words, Ms. Overfield's evidence fails to permit an inference that "an overall animus and *pattern of sexual discrimination* and harassment" existed. *Delsa Brooke Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1174 (10th Cir. 2020) (emphasis added). The undisputed evidence shows that the incident between Judge Johnson and Ms. Overfield happened because Judge Johnson wanted to discuss cooperation issues between Tammy Thomas (his court reporter) and Ms. Overfield. *See* Aplt. Br. at 5-6 (citing Aplt. App. at 171-72). But isolated incidents, *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998), and personality conflicts "cannot supply a basis" for a reasonable jury to infer discrimination. *Parker v. Hous. Auth. of Kansas City, Kan.*, 996 F.2d 311 (10th Cir. 1993). And Judge Johnson's decision to defend his court reporter in this context is insufficient to infer discriminatory animus. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1406 n.4 (10th Cir. 1997) ("An employer's . . . favorable treatment of protected employees does not support an inference of discriminatory animus.").

The same goes for Ms. Overfield's evidence about Tasha Thurman and Terri Thurman's experiences with Judge Johnson. *See* Aplt. Br. at 24 (citing Aplt. App. at 215-226). There is no dispute Judge Johnson argued with Terri Thurman about her

retirement. *Id.* at 4-5 (citing Aplt. App. at 223-24, 253). Again, a single sex-neutral "isolated incident" does not permit an inference of discriminatory animus. As for Tasha Thurman, Ms. Overfield did not explain how—viewed individually or integrated contextually—Tasha Thurman's year with Judge Johnson implies sex-based animus. Regardless, the undisputed facts compel a more anodyne explanation and preclude an inference of animus. We have recognized "actual performance" as a "legitimate basis" for differential treatment. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002). The record reveals two similarly situated employees: Tasha Thurman and Tammy Thomas. Ms. Overfield did not allege that Judge Johnson treated Tammy Thomas—Judge Johnson's court reporter after Tasha Thurman—similarly. Nor did she dispute the State's contention that he did not. Aple. Br. at 14. And this "differential treatment" is "explained by a nondiscriminatory motive" since the undisputed evidence also shows that Judge Johnson was upset over Tasha Thurman's job performance. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007). There is no dispute that Tasha Thurman was hired on the condition that she complete the court reporter certification program within one year of her start date; there is no dispute that Tasha Thurman made little progress toward achieving the certification and ultimately did not do so. Aplt. Br. at 3 (citing Aplt. App. at 93, 136). Indeed, Ms. Overfield testified that she heard Judge Johnson telling Tasha Thurman that she needed to do a "better job" and asking her about her progress with her certification. Aplt. App. at 255. The district court correctly determined that "Judge Johnson was upset with

14

[Tasha Thurman] for not completing her court reporter certification" and was "critical of her work." Aplt. App. at 265. Like the district court, we do not condone yelling at staff in the workplace. But Title VII does not protect an employee from reprimands for disappointing progress or poor work performance without evidence suggesting that the employee's sex played a role in those reprimands. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1545–46 (10th Cir. 1995) (distinguishing between general work-related criticism and sex-specific abusive conduct in the workplace). None exists here.

Resisting this conclusion, Ms. Overfield cites two more incidents as evidence of a sex-based hostile environment, each stemming from her initial incident with Judge Johnson: (1) "Mr. Young reprimanded her verbally and in writing on January 13, 2020" following an incident where she locked Judge Johnson's door; and (2) Mr. Young "gave her an untimely annual performance" that "result[ed] in a lower rating than her previous evaluations. Aplt. Br. at 26. (citing Aplt. App. at 76, 81, 157-158). Relying on *Chavez v. New Mexico*, she argues that "these acts of retaliation" show sex-based hostility. Aplt. Br. at 30 (citing *Chavez*, 397 F.3d at 835).

We have no evidentiary basis to consider these assertions. "Unsupported conclusory allegations do not create a genuine dispute of fact." *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1237 (10th Cir. 2004). Ms. Overfield does not dispute that Mr. Young criticized her because locking the visiting judge's door was "not appropriate." And no reasonable jury could infer sex-based hostility from Mr. Young actions in any event. *Chavez*, 397 F.3d at 837. Considering that Ms. Overfield has

15

not provided sufficient evidence from which to infer sex-related motivations from *Judge Johnson's* sex-neutral conduct, it would be a "far greater inferential leap" to impute whatever (unsubstantiated) motive Judge Johnson may have had to *Mr. Young's* "facially neutral conduct[.]" *Id.* (cautioning against imputing sex-based motives from one individual's sex-neutral conduct to another's actions, especially when the latter's conduct responds to a complaint unrelated to sex discrimination). Nor did Overfield argue—much less provide evidence—that any harm resulted from Mr. Young's email. Indeed, Ms. Overfield did not receive a reprimand for locking the door, and the incident was not mentioned in her evaluations. Aplt. App. at 258. Consequently, no evidence supports Ms. Overfield's assertion that Mr. Young's criticism was retaliatory or motivated by sex-based animus.

Similarly, no evidence supports Ms. Overfield's assertion that the "successful" rating she received from Mr. Young was lower than previous evaluations. We have declined to assume that a lower evaluation was "a negative evaluation" simply because an employee alleges receiving "an evaluation lower than previous evaluations." *Stover v. Martinez*, 382 F.3d 1064, 1075 (10th Cir. 2004). That said, no one disputes that Mr. Young considered a "successful" rating a good evaluation. According to the State's policy, Ms. Overfield's "successful" rating made her eligible for a pay increase and longevity bonus. *See* Aple. Br. at 8 (citing Supp. App. at 10, 12; Aplt. App at 76). And Ms. Overfield does not dispute that she received a pay increase and longevity bonus. Consequently, Ms. Overfield has neither provided evidence to support her assertion that the rating she received was a lower rating, nor

16

provided evidence to dispute the State's well-supported contentions that the rating she received was a good evaluation. *See*, *e.g.*, *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir. 1994) (alleging that an evaluation was negative is insufficient without evidence disputing the company's characterization as 'satisfactory,' information about implications, and evidence of detrimental consequences).[1] Besides, Ms. Overfield challenged the evaluation, and Judge Fleming revised the rating to "beyond expectations." *See Somoza v. Univ. of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008) (considering an employee's pursuit of a remedy despite allegedly retaliatory actions). All told, even when viewing the facts and inferences in her favor, Ms. Overfield has not provided evidence sufficient to show that the nature of her working environment supports an inference of discrimination *because of her sex*. *See Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir. 1994) ("If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination as a result of that environment.").

*Third*, the undisputed facts show that Judge Johnson treated male colleagues similarly. Though not necessarily fatal to a plaintiff's claim, we have recognized that evidence showing that an employee of the opposite sex faced similar adverse

---

[1] The undisputed evidence shows that the evaluation was untimely because, among other things, Judge Stockard—Ms. Overfield's boss—expressed doubts about his ability to evaluate Ms. Overfield properly and Mr. Young was named in her complaint to KHRC. Ms. Overfield has provided no evidence to justify cross-examination or otherwise warrant a trial.

treatment to the plaintiff "may undermine" the plaintiff's sex discrimination claim. *Strickland v. United Parcel Serv., Inc.*, 555 F.3d 1224, 1231 (10th Cir. 2009). Here, not only did Ms. Overfield fail to address the State's assertion that Judge Jack "experienced communication difficulties with Judge Johnson and was treated in like manner" as Terri Thurman, Aple. Br. at 2 (citing Aplt. App. at 124), but she affirmed that Judge Jack "experience[d] the *same* problems" with Judge Johnson that Terri Thurman experienced. Aplt. App. at 124 (emphasis added). Ms. Overfield also affirmed that Judge Johnson "spoke to" and "put walls up with" Judge Jack as he did with Terri Thurman. *Id.* Indeed, Ms. Overfield characterized the "conflicts that Terri had with Judge Johnson" as "[t]he communication that [Judge Johnson] *had with everyone.*" *Id.* (emphasis added); *see also* Aple. Br. at 1 (citing Aplt. App. at 122-23) ("Judge Johnson didn't want to work with anybody in the courthouse—not just women."). Even if fellow judges are not similarly situated employees for these purposes, the same reasoning undermines the conclusion that Judge Johnson "treated men and women differently in the workplace," and bolsters the conclusion that Judge Johnson had personality conflicts with co-workers, both male and female.[2]

---

[2] To be clear, we have cautioned that "an employer is not immunized from liability simply because some males received detriments before or contemporaneously with a Title VII plaintiff or because other protected classes received benefits instead of a Title VII plaintiff." *Pitre v. W. Elec. Co.*, 843 F.2d 1262, 1272–73 (10th Cir. 1988) (showing that male employees were also demoted does not necessarily preclude Title VII violation).

In sum, under our Title VII precedents, Ms. Overfield did not provide evidence sufficient to support an inference of discrimination from her evidence of isolated, sex-neutral incidents.  Consequently, Ms. Overfield failed to provide sufficient evidence that she was subject to discrimination because of sex.  Accordingly, the district court did not err in granting summary judgment in favor of the State on Ms. Overfield's Title VII hostile workplace environment claim.[3]

### B. Retaliation.

Title VII also prohibits employers from retaliating against employees who oppose unlawful employment practices.  *See* 42 U.S.C. § 2000e–3(a).  To successfully oppose a motion for summary judgment on a retaliation claim, a plaintiff must establish a genuine dispute of material fact as to whether: (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action.  *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (citation omitted).

Ms. Overfield argues that her January 2021 email to Judge Lynch and Mr. Young expressing concerns about Judge Johnson's return constituted protected

---

[3] We also agree with the district court that, under our Title VII precedents, Ms. Overfield did not provide any evidence sufficient to permit a reasonable jury to find that the conduct at issue was severe or pervasive.  Aplt. App. at 266 (citing *Morris v. City of Colorado Springs*, 666 F.3d 654, 665–68 (10th Cir. 2012)).

opposition to discrimination. *See* Aplt. Br. at 29.[4]  Ms. Overfield also argues that the

rescission of Judge Johnson's transfer, ordered by Judge Lynch, constituted an

adverse employment action against her because: (1) she worked from home on days

Judge Johnson worked at Parsons, which substantially interfered with her work

performance; and (2) Judge Johnson engaged in conduct that substantially interfered

with her work performance. *See* Aplt. Br. at 30–31.  Assuming—without deciding—

that the only identified basis for Ms. Overfield's retaliation claim constituted

protected opposition, we assess whether a reasonable employee would find the

rescission order materially adverse.[5]

---

[4]  The State concedes that Ms. Overfield's formal complaints are protected
opposition, but disputes that her January 2021 email to Judge Lynch and Mr. Young
qualifies as such.  Aple. Br. at 22.  The district court concluded that Ms. Overfield
"failed to preserve" a retaliation claim relying on the January 2021 email as protected
activity.  Aplt. App. at 268 n. 15.  Still, in assessing Ms. Overfield's retaliation claim,
the district court concluded that the January 2021 email "d[id] not constitute
protected activity." Aplt. App. at 268 n. 15.  We do not address the matter because
Ms. Overfield's retaliation claim fails at the material adversity step.

[5]  The State's argument that Ms. Overfield's retaliation claim fails because the
rescission order was "not . . . an employment action directed" at her is misplaced.
*See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 n.2 (10th
Cir. 2006) (noting that the Supreme Court rejected an adverse employment action
requirement).  To prevail on a Title VII retaliation claim, a plaintiff need only show
that a reasonable employee would have found the challenged action materially
adverse. *Id.*  Thus, the "challenged action" here is the rescission order.  Aplt. Br. at
30–31.  Accordingly, the question is whether Ms. Overfield presented sufficient
evidence to permit a jury to conclude that a reasonable employee would have found
the rescission order materially adverse.  As we explain, the answer is no.

### 1. *Material Adversity*

#### a. Work-from-home setup

At the outset, Ms. Overfield's evidence cannot show sufficient adversity required to sustain a retaliation claim, even assuming remote work could be construed as a detriment on these facts. Under our Title VII precedents, the "voluntary nature" of Ms. Overfield's unofficial work-from-home accommodation—set up between her and Judge Lynch—negates "any material adversity" that a mandatory official action might have presented. *Semsroth v. City of Wichita*, 555 F.3d 1182, 1187 (10th Cir. 2009). *See also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998) ("A tangible employment decision requires an official act of the enterprise, a company act."); *Hillig v. Rumsfeld*, 381 F.3d 1028, 1037 n.5 (10th Cir. 2004) (noting that we have applied the "tangible employment action" definition to describe an "adverse employment action").

For example, in *Semsroth*, the plaintiff claimed that she suffered a materially adverse action in retaliation for her past opposition to sex discrimination by being subjected to a fitness-for-duty exam without cause. The facts, however, showed that her supervisors only "informed her that the Department's psychologists would be made available to her without charge if she wished, but the choice was hers; she was *not required* to undergo any testing or treatment in connection with her request for light-duty assignment." *Id.* (emphasis added). When the plaintiff voluntarily met with the psychologist, the doctor administered a fitness-for-duty exam—indeed, an exam that her supervisor requested. But the plaintiff did not terminate the

appointment upon learning about this fitness-for-duty exam. We concluded that the fact the plaintiff "chose" to visit the doctor and, after learning it would involve a fitness-for-duty exam, "continue[d] that visit" entitled the City of Wichita to summary judgment on the materially adverse action issue "regardless of whether any of their supervisors may have acted from a retaliatory motive." *Semsroth*, 555 F.3d at 1187.

That logic applies here. Once Judge Lynch rescinded the transfer order, Ms. Overfield had the option, but not the obligation, to work remotely when Judge Johnson was in Court at Parsons. *See* Supp. App. at 25 (discussing work-from-home arrangement). Ms. Overfield did not dispute this or provide evidence to the contrary. *See also* Aplt. App. at 209 ("After February 20, 2021, I was *allowed* to work remotely on any days Judge Johnson held court in the Parsons courthouse.") (emphasis added). No evidence supports classifying the work-from-home accommodation as an official act or concluding that Ms. Overfield was "required" to work from home. *Semsroth*, 555 F.3d at 1187. Accordingly, the district court correctly determined that Ms. Overfield worked remotely "by choice." Aplt. App. at 269. Since working remotely was Ms. Overfield's voluntary decision, which negates "any material adversity" regardless of "retaliatory motive," summary judgment was thus appropriate. *Semsroth*, 555 F.3d at 1187.

On appeal, Ms. Overfield argues that Judge Lynch's order constitutes retaliation because she "worked remotely on any days Judge Johnson held court in the Parsons courthouse." This argument overlooks two important points. To begin

22

with, the material adversity inquiry focuses on the allegedly "retaliatory action" taken and "not the underlying discrimination" opposed. *Id*. at 1184. Equally important, the undisputed evidence establishes that Ms. Overfield was "not required" to work from home and instead "chose" to do so. *Id*. at 1187.

### b.  Challenges working from home

Even if her work-from-home accommodation could be viewed as involuntary or the State's official act, Ms. Overfield provided insufficient evidence to show material adversity under Title VII's antiretaliation provision. "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). So "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Id.* An action is materially adverse "if the action 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Kincaid v. Unified Sch. Dist. No. 500, Kansas City, Kansas*, 94 F.4th 936, 945 (10th Cir. 2024) (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68)). This is an "objective" inquiry, "not based on a plaintiff's personal feelings." *Daniels*, 701 F.3d at 638 (citation omitted). Accordingly, the critical evidentiary question is whether the record contains "objective evidence of material disadvantage" or "merely the bald personal preferences of the plaintiff." *Semsroth*, 555 F.3d at 1185. "If only the latter, the retaliation claim fails." *Id.*

Ms. Overfield contends that a jury could conclude that a reasonable employee would have found Judge Lynch's rescission order materially adverse. *See* Reply at

23

8.[6] Although she concedes that she was "allowed" to work remotely, she argues that working from home was materially adverse. Aplt. Br. at 15 ("[W]orking remotely substantially interfered with Ms. Overfield's work performance."). In support, she cites testimony detailing difficulties she encountered working from home, including using her personal phone to communicate with pro-se litigants and issues fulfilling her court reporter duties because of the poor sound quality and challenges with hearing. Aplt. Br. at 15–16, 31 (citing Aplt. App. at 209).

Ms. Overfield provided insufficient evidence to show that a reasonable employee would find the rescission order materially adverse. To be sure, whether the challenges Ms. Overfield described substantially interfered with her ability to do her

---

[6] The State contends that "the 'unreasonably interferes with work performance' inquiry applies to hostile work environment claims, not retaliation." Aple. Br. at 24. We have previously recognized that harassment that "create[s] a hostile work environment" may "itself constitute[] a materially adverse action." *See McGowan v. City of Eufala*, 472 F.3d 736, 743 (10th Cir. 2006). A charitable reading of the record on appeal shows that Ms. Overfield did not "adequately argue" this theory before the district court, *Kincaid*, 94 F.4th at 944, presenting "merely a claim of retaliation." *Daniels*, 701 F.3d at 640. So, she is "barred" from advancing on appeal a retaliation claim based on a hostile work environment. *Id.* (citing *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 970 (10th Cir. 1991)). So we analyze Ms. Overfield's claim as a pure retaliation claim.

Even if Ms. Overfield adequately argued this theory before the district court, she did not successfully oppose summary judgment. As the State correctly points out, Ms. Overfield did not provide any evidence that Judge Lynch (1) "orchestrated" Judge Johnson's conduct or (2) "knew" about it and effectively "condoned" it. *McGowan*, 472 F.3d at 743. *See* Aple. Br. at 24 (stating that Judge Lynch had "nothing to do" with Judge Johnson's conduct and that Ms. Overfield "doesn't allege informing him.").

job is "probative" of whether those challenges were "serious enough" to constitute material adversity. *See, e.g.*, *Daniels*, 701 F.3d at 640 (citing *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1087 (10th Cir. 2007)). But subjective perceptions of adversity, without objective evidence of material disadvantage, are insufficient to show material adversity. *See id.* at 638 ("[T]he inquiry is an objective one, and not based on a plaintiff's personal feelings"); *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1222–1223 (10th Cir. 2022) (personal beliefs without objective evidence of material disadvantage insufficient to create an issue of material fact) (citation omitted). Ms. Overfield's testimony in her declaration and deposition shows the difficulties she encountered. But while both her declaration and deposition testimony *describe* challenges, neither *provides objective evidence* of any material disadvantage—much less substantial interference. Consequently, no objective basis supports concluding that a reasonable employee would find the rescission order materially adverse. *See*, *e.g.*, *Ford*, 45 F.4th at 1223 (citing only deposition testimony without any other supporting evidence insufficient to show adverse employment action); *Wheeler v. BNSF Ry. Co.*, 418 F. App'x 738, 751 (10th Cir. 2011) (similar). Accordingly, her claim fails. *Semsroth*, 555 F.3d at 1185.

The uncontroverted evidence compels this conclusion. Ms. Overfield does not dispute that, because of the pandemic, she had already been "work[ing] remotely 2-3 days a week," which saved her "a 35-mile commute." Aple. Br. at 8–9 (citing Aplt. App. at 120, 161). Nor does she dispute the State's assertion that the Eleventh District scheduled other employees to work from home because of the pandemic. *Id.*;

25

c*f. Somoza v. Univ. of Denver*, 513 F.3d 1206, 1218 (10th Cir. 2008) (no disparate treatment where duties voluntarily undertaken without evidence showing significant consequences or unequal treatment).  Indeed she does not dispute that she was "at times already scheduled to work remotely when Judge Johnson was coming to Parsons." Aple. Br. at 9 (citing Aplt. App. at 153).  Although the State asserted that Ms. Overfield did not even "request[] a work phone," Aple. Br. at 9, Ms. Overfield did not dispute the State's assertion or explain why she did not request a work phone. *See, e.g.*, *McGowan v. City of Eufala*, 472 F.3d 736, 743 (10th Cir. 2006) (observing no evidence suggesting that plaintiff requested shift change and concluding that failure to reassign shift was not materially adverse).  In sum, no objective evidence supports concluding that remote work's impact on Ms. Overfield's performance was anything more than a minor inconvenience—if not "self-imposed."  Aple. Br. at 17. *See Semsroth*, 555 F.3d at 1187 (voluntary undertakings negate material adversity).[7]

### c.  Judge Johnson's conduct

The same rationale applies to Ms. Overfield's contention that a jury could conclude that a reasonable employee would have found Judge Lynch's rescission order materially adverse, Reply at 8, because "Judge Johnson's conduct substantially interfered with Ms. Overfield's work performance." Aplt. Br. at 16.  In support, she

---

[7] Relevant also is that Ms. Overfield continued to perform her job satisfactorily. *See, e.g.*, *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1216 n.5 (10th Cir. 2010) (noting plaintiff's strong performance rating, despite negative experiences after filing a discrimination claim, to bolster conclusion that plaintiff failed to show challenged conduct was materially adverse and would dissuade a reasonable employee from filing or supporting discrimination claims).

cites her testimony that Judge Johnson "refused to communicate" with her about "monthly staff Zoom meetings and numerous other meetings concerning the court proceedings and hearings. Aplt. Br. at 16, 31, (citing Aplt. App. at 209). The State argues these contentions are conclusory and do not show material adversity.

We agree. While regrettable, the passive behavior Ms. Overfield challenges is insufficient to show material adversity. *See Johnson*, 594 F.3d at 1216 (concluding that "cold shoulder" and general avoidance from supervisors are insufficient to show material adversity). Ms. Overfield needed to show that Judge Johnson's conduct rose above a petty slight, minor annoyance, or a simple lack of good manners. *See McGowan*, 472 F.3d at 742.

Yet Ms. Overfield stated only that running a courthouse without communication with all staff is hard. That may be true, but without "objective evidence of material disadvantage" resulting from Judge Johnson's poor communication, *Ford*, 45 F.4th at 1222, or "evidence suggesting an objective advantage" to having Judge Johnson communicate better, *Semsroth*, 555 F.3d at 1185, Ms. Overfield's statement amounts only to an "undefined subjective preference." *McGowan*, 472 F.3d at 743. Consequently, Ms. Overfield provided only evidence of mere personal preferences, which are insufficient to support a conclusion of material adversity. *Daniels*, 701 F.3d at 638. Accordingly, her retaliation claim fails. *Semsroth*, 555 F.3d at 1185.[8]

---

[8] In any event, Ms. Overfield did not dispute that Terri Thurman informed her of the meetings "[e]very time." Aple. Br. at 9 (citing Aplt. App. at 153). *See, e.g.*, *Daniels*,

In sum, under our Title VII precedents, Ms. Overfield did not provide evidence sufficient to permit a jury to find that a reasonable employee would have found the rescission order materially adverse.  Thus, a jury could not find that the rescission order would dissuade a reasonable worker from making or supporting a charge of discrimination.  Accordingly, the district court did not err in granting summary judgment in favor of the State on Ms. Overfield's retaliation claim.

### III. Conclusion

We **AFFIRM** the district court's decision to grant summary judgment in favor of the State on Ms. Overfield's hostile work environment and retaliation claims.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

701 F.3d at 639–40 (rejecting contention that decreased communications, while perceived as professionally isolating, were materially adverse considering evidence of plaintiff's sustained satisfactory performance); *Wheeler*, 418 F. App'x at 749 (concluding that receiving work assignments from a co-worker, rather than a supervisor, absent other objective evidence of any material impact, cannot alone support a jury finding of material adversity).